# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARDENDALE ATHLETIC AND SOCIAL | : | |
| CLUB INC. | : | |
| 42 N 9th St | : | |
| Philadelphia, PA 19123 | : | CIVIL ACTION |
|           Plaintiff, | : | NO. _____ |
|       vs. | : | |
| CITY OF PHILADELPHIA | : | |
| 1515 Arch Street, 14th Floor | : JURY TRIAL DEMANDED | |
| Philadelphia, PA 19102 | : | |
|    and | : | |
| U.S. MARSHALS SERVICE | : | |
| Building CG-3, 15th Floor | : | |
| Washington, D.C. 20530 | : | |
|    and | : | |
| JOHN AND JANE DOES 1-10, | : | |
| c/o CITY OF PHILADELPHIA | : | |
| (Individually and in their official capacities) | : | |
| 1515 Arch Street, 14th Floor | : | |
| Philadelphia, PA 19103 | : | |
|    and | : | |
| c/o U.S. MARSHALS SERVICE | : | |
| (Individually and in their official capacities) | : | |
| Building CG-3, 15th Floor | : | |
| Washington, D.C. 20530 | : | |
|           Defendants | : | |

## COMPLAINT

Plaintiff Gardendale Athletic and Social Club Inc, by and through its undersigned counsel,

Alan L. Frank Law Associates, P.C., hereby files this Complaint against Defendants the City of

Philadelphia, the U.S. Marshals Service, and John and Jane Does 1-10, and in support thereof,

aver as follows:

## INTRODUCTION

1.    Plaintiff brings this action against Defendants for damages, compensatory,

equitable and punitive in nature, to redress the deprivation by the Defendants of the civil rights

secured to the Plaintiff by the Constitution and laws of the United States and the Commonwealth of Pennsylvania, and for claims arising under state common law relating to a raid that took place on September 7, 2024, and targeted actions thereafter, outlined more fully below.

## JURISDICTION AND VENUE

2.      'The United Stated District Court for the Eastern District of Pennsylvania has jurisdiction over this action pursuant to Title 28 U.S.C. Sec. 1331, 1332, 1343, 1367(a), and Title 42  U.S.C. Sec. 1983, as well as principles of pendent and ancillary jurisdiction. This action arises out of violations of the Constitution, treaties, and statutes of the United States. Pursuant to Local Rule Civil Procedure 5.1.1 of the United States District Court of the Eastern District of Pennsylvania, which prohibits the averment of specific unliquidated monetary damages, Plaintiff avers only that the amount. in controversy exceeds the jurisdictional amount of seventy-five thousand dollars ($75,000) and the mandatory arbitration limit of one hundred fifty thousand dollars ($150,000), exclusive of interest and costs.

3.      Venue for this action is properly laid in this district pursuant to 28 U.S.C. § 1391 (b)(1) and (b)(2) because the acts and/or omissions giving rise to Plaintiffs' claims all occurred in this judicial district.

## THE PARTIES

4.      Plaintiff Gardendale Athletic and Social Club Inc. ("Plaintiff" or "Gardendale Social") is a nonprofit Pennsylvania corporation, which operates a club/bar at 42 N 9th St, Philadelphia, PA 19123.

5.      Defendant City of Philadelphia is a first-class municipality in Philadelphia County, Pennsylvania and owns, operates, manages, directs and controls the City of Philadelphia Police Department and the City of Philadelphia Department of Licenses & Inspections, which employs

2

the Pollice Officer and Licenses and Inspection Officer John/Jane Doe Defendants. At all times

relevant herein, Defendant City of Philadelphia was responsible for the policies, procedures, and

practices implemented through its various agencies, agents, departments, and employees,

including the Philadelphia Police Department and Philadelphia Department of Licenses and

Inspections, and for injury occasioned thereby.

6.      Defendant U.S. Marshals Service ("USMS"), which maintains its principal place

of business at Building CG-3, 15th Floor, Washington, D.C. 20530, is a federal agency organized

under the laws of the United States. At all times relevant herein, it is and was responsible for the

policies, procedures, and practices implemented through its various agencies, agents, departments,

and employees, and for injury occasioned thereby. USMS employs or employed the U.S.

Marshals John/Jane Does 1-10.

7.      Defendant John and Jane Does 1-10 are City of Philadelphia Police Officers,

and/or City of Philadelphia License and Inspection Officers, and/or U.S. Marshals, whose names

are not currently known, that were present and involved in official activities, which give rise to

the within causes of action and were employed by the Defendants at all times relevant to this

action. Defendant John/Jane Does 1-10 are being sued both as individuals and in their official

capacity. (Defendants City of Philadelphia, USMS, and John and Jane Does 1-10, are collectively

referred to herein as "Defendants")

8.      At all times material to this Complaint, Defendants acted toward Plaintiffs under

color of the constitutions, laws, statutes, charters, ordinances, rules, regulations, customs, and

usage of the United States, the Commonwealth of Pennsylvania, the City of Philadelphia, and/or

the Philadelphia Police Department, Philadelphia Licenses and Inspection, and/or U.S. Marshals.

3

The activities of Defendants as set forth herein constituted state action within the meaning of the Civil Rights Act, 42 U.S.C. Section 1983 and 1985.

9.    At all times material to this Complaint, the Defendants City of Philadelphia and USMS acted solely or through agents, servants, and/or employees, acting within the scope of their employment.

10.    At all times material to this complaint, the Defendants acted separately, jointly, and in concert with each other to deprive Plaintiff of its constitutionally protected rights and to inflict other harm, as described more fully herein.

11.    Each Defendant had the duty and the opportunity to protect the Plaintiff from the unlawful actions of the other Defendants, but each Defendant failed and refused to perform such duty, thereby proximately causing the Plaintiff's injuries and damages, described herein.

## FACTS

### Background

12.    Gardendale Social has operated as a social club since 1935, and at all times relevant to this Complaint, it maintained an active liquor license, License ID# 1377, License # CC53342.

13.    Gardendale Social's President and Manager is Carl Pearson, and African American male ("Pearson").

14.    Throughout its last eight years of business, through the date of the incident described herein that forms the basis of Plaintiffs' claims, September 7, 2024, Gardendale Social received little to no complaints relating to its operations from anyone, including employees, customers, the public, governmental agencies, or law enforcement.

4

**The Raid**

15.     On Friday, September 6, 2024, Gardendale Social opened for business around 11:30 pm.

16.     At approximately 1:20 am on September 7, 2024, Pearson was standing outside the front door of Gardendale Social when approximately a dozen unmarked cars came speeding down the driveway and stopped directly in front of Gardendal Social's entrance.

17.     The cars did not have flashing lights or any other indicators that they were law enforcement vehicles.

18.     Approximately 10-20 men and women (the "John/Jane Does") jumped out of the cars, many with guns drawn, and others brandishing sledgehammers and crowbars.

19.     All of the John/Jane Does were dressed in all black, and with the exception of one, they were wearing masks covering their entire faces, so only their eyes could be seen.

20.     A few of the John/Jane Does were wearing a badge that said "U.S. Marshal", indicating that they were employees, agents, and/or representatives of Defendant USMS.

21.     However, none of the John/Jane Does identified themselves as law enforcement, nor did they identify the department or agency they worked for.

22.     When the John/Jane Does jumped out of the cars with their guns drawn, Gardendale Social's security guards, who at first thought they were victims of a robbery, drew their own guns (lawfully in their possession) in protection.

23.     The Gardendale Social security guards and the John/Jane Does were yelling at each other to put their guns down.

24.     The John/Jane Does yelled at the Gardendale Social security guards and Pearson to "turn around", "face the wall", "put your hands on the wall", "don't look at me", and "keep your face down".

25.     The John/Jane Does also yelled at the patrons of Gardendal Social to disburse.

26.     One of the John Does told Pearson and the Gardendale Social security guards to empty their pockets and hand over their cell phones, which they did.

27.     Another one of the John Does demanded that Gardendale Social's security guard Charles Do, who was now sitting on the ground per the John Does' directive, provide his identification, to ensure that his gun was legally registered. Charles Do complied and provided his identification, and the John Does confirmed that his gun was legally registered.

28.     During this commotion, some of the patrons of Gardendale Social were asking the John/Jane Does what was going on, and in response, the John/Jane Does falsely stated that Gardendale Social did not have a liquor license (which in fact it did), that the patrons needed to leave, and that Gardendale Social was going to be permanently closed, and would not reopen.

29.     At that point, Pearson tried to explain to the John Does that were detaining him outside that Gardendale Social did have a valid liquor license, and Pearson offered to provide the John Does proof of the valid liquor license, but his offers were refused and rejected.

30.     One of the John Does, a tall, thin, African American male started lecturing Pearson about lying, and again falsely stated that Gardendale Social did not have a liquor license.

31.     This particular John Doe detained Pearson during the entire September 7, 2024 incident, which lasted approximately 3 hours.

6

32.    Over the next 20-30 minutes, in response to the John/Jane Does' directives, all of the patrons that were inside Gardendale Social were instructed to vacate the premises, and in compliance, all patrons left Gardendale Social.

33.    On their way out, the John/Jane Does were yelling at the patrons that Gardendale Social did not have a liquor license (when in fact it did), yelled at the patrons to not talk to Pearson or the Gardendale Social security guards being detained, and yelled that Gardendale Social was being shut down and won't be reopening.

34.    The John/Jane Does also told Gardendale Social's employees that they were going to be arrested and should look for another job.

35.    About 20 minutes later, another African American John Doe with a grey beard came outside and asked Pearson if Gardendale Social had a liquor license. Pearson again advised that Gardendale Social did have a valid liquor license and that the liquor license was likely on his desk in the office at Gardendale Social, because he had been using it to prepare the renewal application for the license, which was due in October 2024 (the following month).

36.    Pearson again requested that he be permitted inside to retrieve Gardendale Social's liquor license, and further advised that he had other information about Gardendale Social's liquor license on his mobile phone, that had been confiscated by the other John Does, and requested that his phone be returned to him so that he could provide the John/Jane Does this information.

37.    Nonetheless, the John Does continued to detain Pearson outside of Gardendale Social, would not allow Pearson to retrieve the liquor license from the office inside Gardendale Social, and would not provide him his mobile phone (which the John Does had confiscated), to provide the liquor license information he had thereon.

38.     Over the next 45 minutes, the John/Jane Does went in and out of Gardendale Social, while Pearson was detained by the John Does outside, the employees of Gardendale Social were detained inside, the parking lot and entrance to Gardendale Social were blocked, and other employees and contractors that arrived for their shifts after the raid began were told by the John/Jane Does to leave, that they would not be working, and that Gardendale Social would not be reopening.

39.     At some point, some of the John Does stated that they were with the Philadelphia Police Department.

40.     These Philadelphia Police Officer John Does told Pearson that they were going to arrest him, that he was going to be taken to jail, and that they were going to also arrest the employees who were being detained inside Gardendale Social.

41.     These Police Officer John Does further advised that they would be taking all of the cash, cash registers, sound systems, alcohol, security cameras, and anything else Gardendale Social was using to operate the "illegal business".

42.     At some point in the half hour that followed, the John Does directed two Gardendale Social security guards that they were to leave, but the John Does continued to detain Pearson and Gardendale Social's security guard Charles Do outside of Gardendale Social, and continued to detain Gardendale Social's bartenders and employees inside Gardendale Social.

43.     Approximately 90 minutes into the raid and detainment, one of the John Does returned Pearson's cell phone to him, so that he could retrieve and provide any information he had regarding Gardendale Social's liquor license.

44.     Immediately upon receiving his cell phone, which had been confiscated by the John Does, and while still being detained outside of Gardendale Social, Person showed the John

Doe that had been detaining him a letter that Gardendale Social had received from the Liquor Control Board, from approximately three weeks before, that referenced Gardendale Social's active liquor license.

45.    The John Doe that was detaining Pearson and to whom Pearson showed the Liquor Control Board Letter, stated that he didn't care whether Gardendale Social had an active liquor license or not, and told Pearson that he needed to "manage the business better".

46.    Notwithstanding Pearson's provision of the Pennsylvania Liquor Control Board letter showing that Gardendale Social had an active and valid liquor license, and Person's repeated requests to retrieve Gardendale Social's liquor license from inside the office at Gardendale Social, the John Does continued to detain Pearson outside the door of Gardendale Social, continued to detain Gardendale Social's employees inside of Gardendale Social, and continued their raid, search and seizure of Gardendale Social and its property.

47.    At approximately 2:45 am, the John Does told Gardendale Social security guard Charles Do to leave Gardendale Social, but continued to detain Gardendale Social's employees inside of Gardendale Social, and continued to detain Pearson outside of Gardendale Social, telling Pearson that they were "waiting for his ride", implying that additional police officers were on their way to arrest him.

48.    Per the John Does' directive, Gardendale Social security guard Charles Do left Gardendale Social, but approximately 15 minutes later, around 3:00 am, he returned to retrieve his bag that he had forgotten inside Gardendale Social.

49.    The John Does allowed Charles Do to go inside Gardendale Social to retrieve his bag, but despite Pearson's repeated requests, the John Does would not allow Pearson inside and

9

continued to wrongfully detain him outside of Gardendale Social and to wrongfully detain the other Gardendale Social employees inside.

50.     At or around this time, two marked Philadelphia Police vehicles pulled up to the front entrance of Gardendale Social, whereupon one man and one woman exited the marked vehicles, both wearing Philadelphia Department of Licenses & Inspections shirts, and both carrying clipboards. Neither identified themselves.

51.     The female Jane Doe Licenses and Inspection Officer that exited the marked Philadelphia Police Department vehicle was holding a cease-and-desist operations notice, which she proceeded to post on the front door of Gardendale Social.

52.     When Pearson read the cease-and-desist operations notice that the Jane Doe Licenses and Inspection Officer had posted on Gardendale Social's front door, Pearson noticed that the address indicated on the cease-and-desist operations notice was not the address of Gardendale Social, and told the John Does that were detaining him and the Jane and John Doe Licenses and Inspection Officers that the address on the cease-and-desist operations notice that had been posted was not the address of Gardendale Social.

53.     Pearson also showed the Jane Doe Licenses and Inspection Officer the letter from the Liquor Control Board received three weeks prior evidencing Gardendale Social's active liquor license, that he had on his mobile phone, which indicated a different address for Gardendale Social than the address noted on the cease-and-desist operations notice that had been posted on the door of Gardendale Social.

54.     The John/Jane Does then gathered for a private discussion, during which they were looking at information on their computers.

10

55.     The John/Jane Does then proceeded to ask Pearson which building unit holds the Gardendale Social liquor license, and Pearson explained that the liquor license was not associated with a particular unit, as indicated in the letter received three weeks prior from the Liquor Control Board regarding Gardendale Social's liquor license that Pearson had on his mobile phone.

56.     At this point, the Jane Doe Licenses & Inspections Officer removed the cease-and-desist operations notice that she had posted on Gardendale Social's door.

57.     One of the John Does, who appeared to have supervisory authority, spoke with the John and Jane Doe Licenses and Inspection Officers, then came back and directed Pearson to leave Gardendale Social.

58.     Fearing that he would be arrested, Pearson followed the John Doe's directive and walked about three blocks away from Gardendale Social.

59.     Pearson then texted Mike Donahue, one of the bartenders at Gardendale Social ("Bartender Donahue"), to see if Bartender Donahue and/or any other Gardendale Social employees were still being detained by the John/Jane Does, and to see if Bartender Donahue had any further information.

60.     Bartender Donahue explained to Pearson that he was told to leave by the John/Jane Does, but was about a half block from Gardendale Social and could still see the activities going on there.

61.     Bartender Donahue recounted to Pearson that the John Does were loading Gardendale Social's liquor bottles onto trucks, he could hear one of the John Does say, "I drove 4 hours for nothing", and then saw the John Does start to unload the liquor bottles off the trucks bringing the liquor bottles back into Gardendale Social.

11

62.    Bartender Donahue further recounted to Pearson that Nasiah Tabb, another Gardendale Social bartender who was still being detained inside Gardendale Social by the Defendants, told Bartender Donahue that he heard one of the John Does say they "made a mistake, and had the wrong address".

63.    Another Gardendale Social bartender who was being detained inside of Gardendale Social heard one of the John Does offer a bottle of Johnnie Walker to another one of the John Does.

64.    At approximately 3:30 am, everyone who was being detained inside Gardendale Social was released and told to leave, and the John/Jane Does began to leave the premises of Gardendale Social.

65.    Once Pearson confirmed that all of the John/Jane Does had left Gardendale Social, Pearson returned to Gardendale Social.

66.    Upon entering, Pearson saw that Gardendale Social had been completely destroyed by the Defendants.

67.    Unopened liquor bottles that were previously on shelves, were on the floor and on top of the bar, many were broken and shattered.

68.    All of the open bottles of liquor, including top shelf liquor, had been emptied out.

69.    The security cameras at Gardendale Social were ripped out of the walls and were hanging disconnected.

70.    Gardendale Social's cash registers, including ones with keys in them, had been pried open and broken, and the cash removed.

71.    Gardendale Social's Plasma televisions were ripped off the wall.

72.    A door that was locked to keep patrons out of the back was kicked off its hinges.

73.    Gardendale Social's POS system, which tied computers and cash registers together, was ripped out of the wall.

74.    Hundreds of bottles and cans of beer, alcoholic seltzers and soft drinks that were previously in boxes, were thrown carelessly into a cooler and damaged.

75.    Several expensive bottles of liquor that were in Gardendale Social immediately prior to the raid were no longer there, including one Johnnie Walker Blue bottle, one Johnnie Walker Black bottle, five bottles of Ace of Spades champagne, two bottles of Moet & Chandon champagne, and three bottles of Dom Perignon champagne.

76.    Documents, including an alcohol inventory list, were missing.

77.    Upon Pearson's return to Gardendale Social, Stephen, another Gardendale Social bartender who had been detained inside, returned and handed Pearson a stack of money in a rubber band, which had a piece of yellow paper on top with a phone number written on it, and told Pearson that one of the John Does gave it to him and said to call the number written on the yellow paper on Monday at 10:00 am.

78.    No further information was provided to Plaintiff regarding the raid or the John/Jane Does that effectuated it, or the justification for the raid, force, detainment, search or seizure of Gardendale Social.

79.    Throughout the more than 3 hour raid by Defendants, Plaintiff's employees and patrons were rounded up at gunpoint, detained, held against their will, searched, and Plaintiff's and its property was seized, confiscated and destroyed.

80.    Defendants improperly and unlawfully raided Gardendale Social, violated Plaintiff's and its employees and patrons' constitutional and state law rights, and violated multiple federal, state, and local laws, without justification.

81.     Defendants' raid of Gardendale Social was in violation of the City of Philadelphia Police Department guidelines, including but not limited to, those associated with Liquor License Establishments (DIRECTIVE 3.18), Search Warrants (DIRECTIVE 5.7), Suspect Confrontations Questioning (DIRECTIVE 5.16), Interviews and Interrogations (DIRECTIVE 5.23), Digital Evidence (DIRECTIVE 5.30), Uniforms and Equipment (DIRECTIVE 6.7), Selection and Training (DIRECTIVE 6.9),  Departmental Organization and Authority (DIRECTIVE 7.19), Duty To Intervene To Prevent Police Misconduct, Unethical Behavior, Or Mistake (DIRECTIVE 8.10), Use Of Force (DIRECTIVES 10.1 and 10.2), Plainclothes Officers Operations (DIRECTIVE 10.8), Pedestrian Investigations (DIRECTIVE 12.8), and Property Taken Into Custody (DIRECTIVE 12.15).

82. Defendants' raid of Gardendale Social was also in violation of USMS Policy Directives, including, but not limited to, USMS Policy Directive 1.1 Mission And Organization, USMS Policy Directive 1.2 General Management, and USMS Code Of Professional Responsibility.

83. The raid of Gardendale Social by the Defendants was a result of the policy and customs of Defendants the City of Philadelphia, the Philadelphia Police Department, Philadelphia L&I, and USMS.

84.     As a direct and proximate result of Defendants' raid, acts and omissions, Plaintiff has suffered great financial losses and expense, including but not limited to lost business, lost income, lost future earnings, property damage, and costs of repairs and replacement of damaged equipment, as well as reputational harm, harm to goodwill, embarrassment, and humiliation.

85.     As required by, and in compliance with the Pennsylvania Tort Claims Act, on or about October 16, 2024 Plaintiff provided notice of its tort claims to the Defendants, which was

within six months of the accrual of the causes of action.  See Plaintiff's Notice of Claims to

Defendants, attached collectively as Exhibit "A".

86.    On November 4, 2024, Plaintiff provided Defendants with Amended Notices of

Claims. See Amended Notices of Claims, collectively attached as Exhibit "B".


### Defendants' Continued Targeting of Plaintiff

87.    In the days, weeks, and months following the September 7, 2024 raid of

Gardendale Social, Defendants have continued to target Plaintiff in attempt to shut Gardendale

Social down.

88.    Specifically, on September 17, 2024 – just ten days after the raid – Philadelphia

Licenses and Inspection issued a Violation Notice and Order to Correct, no. CF-2024-099052 (the

"L&I Notice") which cited Gardendale Social with several violations of the Philadelphia Building

Construction and Occupancy Code, Title 4 of the Philadelphia Code of General Ordinances.

Upon information and belief, the alleged violations were based on an investigation/inspection

done during the unlawful raid.

89.    The L&I Notice listed *seventeen* purported violations, none of which involved the

failure to maintain an active liquor license or failure to comply with liquor license laws, including

the following conditions in violation: (1) Update Zoning / Use Permit To Use Gardendal Athletic

And Social Club in Units B, C and D or Return Back To Their Last Approved Uses; (2) Obtain

Certificate of Occupancy To Use Units B, C and D for Gardendale Athletic And Social Club; (3)

Post Lawful Occupancy Sign; (4) All Drums / Containers Shall Be Marked With Contents Inside

Or Remove Them; (5)  Obtain / Renew Amusement License (3001); (6) Obtain / Renew Food

Preparing and Serving License (3121); (7) Provide Current Fire Alarm Certification and Have

15

Licensed Contractor Upload Into The Eclipse Portal; (8) Provide Current Sprinkler System

Certification and Have Licensed Contractor Upload Into The Eclipse Portal; (9) Have All Expired

Fire Extinguishers Inspected And Tagged With Current Year; (10) Security Grilles / Gates Shall

Not Be Down During Business Hours; (11) Install Signage On Door To Fire Alarm Panel Stating:

Fire Alarm Room; (12) Repair / Replace Broken Emergency Light; (13) Remove All Storage

Around HVAC System and Hot Water Tank; (14) Secure All Cylinders/Tanks or Remove Them;

(15) Install/Mount Fire Extinguisher On Ground Near Exit Door; (16) Remove All Storage

Underneath Stairs; and (17) Remove Motorcycle From Building.

90.    The L&I Notice gave Gardendale Social until October 22, 2024, to correct all

conditions cited and to notify L& I of such corrections.

91.    However, Gardendale Social never received a copy of the L&I Notice, or even

knew that it was issued.

92.    Twenty days thereafter, on September 27, 2024, a shooting occurred in the parking

lot of Gardendale Social, during which an employee of Gardendale Social, who had just finished

his shift, shot an irate and unstable individual who was brandishing a knife, threatening him, and

was attempting to break into to Gardendale Social. The Gardendale Social employee who shot the

irate individual was not charged with any crime.

93.    Immediately after the shooting, the Philadelphia Police Department demanded that

Gardendale Social provide it security camera recordings from the date of the shooting incident,

which Gardendale Social explained it could not provide due to its security cameras being ripped

out of the walls and security system being completely damaged by Defendants during the raid on

September 7, 2024.

94.     As a result of Gardendale Social's inability to provide the Philadelphia Police Department camera footage due to the Defendants' actions and destruction during the raid on September 7, 2024, the Philadelphia Police Department initially accused Gardendale Social of failing and refusing to cooperate and provide information related to the shooting investigation.

95.     The Philadelphia Police Department determined that the September 27, 2024 shooting incident qualified Gardendale Social as a "Critical Nuisance Business", pursuant to Philadelphia Code § 9-4401(5), and on October 18, 2024, issued Gardendale Social a "Notice of Violation for Nuisance Behavior Under § 9-4400 and an Intent to Cease Operations" (the "Notice of Nuisance Behavior").

96.     The Notice advised Gardendale Social of the designation of the Business as a "Critical Nuisance Business," and that failure to request administrative review would result in the issuance of a cease of operations order.

97.     On October 29, 2024, Defendant L&I sent a Final Violation Notice to Gardendale Social listing the seventeen purported violations that were apparently previously included in the L&I Notice (the "L&I Final Violation Notice"). This was the first time Plaintiff learned about the alleged violations. The L&I Final Notice is attached as Exhibit "C".

98.     Although Gardendale Social did not see any inspection or reinspection by the City of Philadelphia, the L&I Final Violation Notice stated that "on 10/28/24 the Department of Licenses and Inspections re-inspected/investigated the property to determine whether [Gardendale Social] had corrected the cited violations [those cited in the L&I Notice that Gardendale Social never received], The inspection found that not all violations were corrected" See Exhibit "C".

99.     Pearson immediately reached out to Philadelphia L&I regarding the L&I Final Violation Notice, and on October 31, 2024, Pearson emailed Natasha Lee, the Code Enforcement

Supervisor from L&I, to advise that Gardendal Social had just received the L&I Final Violation Notice, but did not receive the prior L&I Notice, and to inquire as to which alleged violations needed to be corrected and by what date.

100.    In response, Ms. Lee attached the Final Violation Notice and stated that three licenses required renewal before a Cease Operations would be enforced on November 6, 2024, including Food Preparing and Serving (License Code 900115), Amusement (License Code 828340), and Special Assembly Occupancy (License Code 909077).

101.    Plaintiff corrected the purported violations and renewed the 3 licenses.

102.    At or around the same time, on or about October 31, 2024 Gardendale Social also submitted the renewal application for its Liquor License online, and the LCB website indicated that the liquor license was pending.

103.    Unbeknownst to Gardendale Social, apparently on November 5, 2024, L&I inspected outside the property at 421 N. 9th Street, where Gardendale Social leases space. The outside area of the property where L&I inspected is also shared by other tenants, unrelated to Gardendale Social.

104.    On November 6, 2024 L&I issued a Violation Notice and Order to Correct, no. CF-2024-117607 (the "L&I November Notice").  The L&I November Notice is attached as Exhibit "D".

105.    The L&I November Notice identified 3 conditions in violation: (1) Renew expired Special Assembly Occupancy License; (2) Remove Weeds and High Grass in Front of Roll Down Gate; and (3) Remove Boxes, Discarded Furniture and any items in front of roll down gate.  See Exhibit "D".

106.    Other than renewal of the expired Special Assembly Occupancy License, the violations cited in the L&I November Notice were not even on the part of the property leased by Gardendale Social, but to not have a cease and desist order issued, Gardendale Social corrected both violations relating to the outside of the entire property identified on the L&I November Notice and notified L&I that the violations had been corrected.

107.    In or around the beginning of December 2024, Gardendale Social contacted Defendant the City of Philadelphia to address the Notice of Nuisance Behavior, and requested administrative review, which was subsequently held.

108.    Notwithstanding, at some point thereafter, unbeknownst to Gardendale Social, the Defendant City of Philadelphia issued another Cease Operations Order which provided that all work/operations at Gardendale Social cease by February 5, 2025 (the "Second Cease Operations Order"). A copy of the Second Cease Operations Order is attached as Exhibit "E".

109.    However, the Second Cease Operations Order was not properly posted on Gardendale Social's door nor was a copy received by Gardendale Social, but rather was found by another tenant on the property, on the ground in the parking lot and provided to Gardendale Social.

110.    Ultimately, as a result of the administrative review process, Gardendale Social and Defendant City of Philadelphia entered into A Nuisance Abatement Plan pursuant to Philadelphia Code § 9-4404 to abate the alleged nuisance conditions, and Gardendale Social was advised by the City of Philadelphia that execution thereof allowed the City to lift the Second Cease Operations Order.

111.    L&I came out and did another reinspection of Gardendale Social in or around

February of 2025, Gardendale Social then provided confirmation to L&I that the outstanding

violations had been corrected (which had been previously provided to L&I) and, as a result,

Gardendale Social resumed operations.

112.    Thereafter on or about May 5, 2025, L&I appeared at Gardendale Social and

verbally advised Gardendale Social that it must again cease operations stating that Gardendale

Social was on a cease operations list.

113.    On May 6, 2025, Gardendale Social contacted Ms, Lee at L&I to obtain

information about this cease operations directive and was advised that Gardendale Social again

needed to be reinspected by L&I to continue operations.

114.    Shortly thereafter, L&I reinspected Gardendale Social and the entire property at

421 N. 9th Street, and Gardendale Social passed the inspection.

115.    Gardendale Social then resumed operations once again.

116.    The aforesaid actions and omissions of the Defendants caused Gardendale Social

significant damages, including lost revenues and additional costs an expenses.

## COUNT I
## 42 U.S.C. § 1983
## (VIOLATIONS OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS)
### Unlawful Search and Seizure, Taking, Excessive Force, Substantive and Procedural Due Process, Equal Protection, and Bystander Liability
### Plaintiff v. Defendants City of Philadelphia
### Plaintiff v. John/Jane Doe City of Philadelphia Police Officers 1-10
### Plaintiff v. John/Jane Doe Philadelphia Department of Licenses & Inspection Officers 1-10

117.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs

as if set forth at length herein.

118.    Under the Civil Rights Act, 42 U.S.C. §1983, no person acting under the color of state law may deprive a person of rights protected by the United States Constitution or federal law.

119.    With respect to the actions set forth in this Complaint, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 at all times acted "under the color of state law" with each of the John/Jane Doe Defendants acting in their official capacity and in their individual capacity.

120.    Acting under the color of law, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 worked a denial of Plaintiff's rights, privileges or immunities secured by the United States Constitution and by Federal law.

121.    In the manner described herein above, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 all acted with deliberate indifference and/or reckless disregard of Plaintiff's constitutional rights.

122.    Pursuant to the 14th Amendment of the United States Constitution, no person shall be deprived of life, liberty or property without due process of law.

123.    Plaintiff is a "person" within the meaning of the 14th Amendment.

124.    Pursuant to the 14th Amendment of the United States Constitution, Plaintiff has "property interests" in:

    a.  the ability to use and enjoy its property;

    b.  the right to conduct its business without adversely affecting public health, safety and welfare;

    c.  its business reputation.

125.    Pursuant to the 14th Amendment of the United States Constitution, Plaintiff has

"liberty interests" in:

     a.  the right to operate a legitimate business, free from arbitrary deprivation by, and harassment from public officials;

     b.  the right to be free from misuse of the civil process; and

     c.  the right to be free from false, baseless and/or exaggerated accusations of violations of laws, regulations, and/or ordinances;

126.    As more fully set forth above, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 have deprived Plaintiff of its constitutionally-protected substantive due process rights by, among other things:

     a.  impeding Plaintiff's ability to use and enjoy its property;

     b.  impeding Plaintiff's ability to operate its business;

     c.  tarnishing Plaintiff's reputation in the business community and the City of Philadelphia;

     d.  treating Plaintiff in a disparate manner than other businesses and citizens of the City of Philadelphia who have liquor licenses.

127.    As set forth more fully above, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 have denied Plaintiff equal protection by, among other things:

     a.  selectively enforcing the laws, ordinances and regulations of Pennsylvania against Plaintiff but not other similarly situated citizens and businesses in the City of Philadelphia;

     b.  selectively using their regulatory authority to interfere with the business activities of Plaintiff but not other similarly situated citizens and businesses in the City of Philadelphia;

     c.  selectively and unreasonably raiding Gardendale Social but not other similarly situated citizens and businesses in the City of Philadelphia;

     d.     selectively and unreasonably issuing Gardendale Social violation notices and cease and desist operations orders but not issuing the same to other similarly situated business in Philadelphia; and

     e.     treating Plaintiff in a disparate manner than other businesses and citizens of the City of Philadelphia.

128.     Pursuant to the Fifth Amendment of the United States Constitution, Plaintiff is protected against the taking of private property without just compensation.

129.     As described more fully above, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 have deprived Plaintiff of its Fifth Amendment rights, and took Plaintiff's property without just compensation by, among other things:

     a.   shutting Gardendale Social down on September 7, 2024;

     b.   confiscating Plaintiff's' liquor and documents;

     c.   damaging Plaintiff's cash registers, POS system, televisions, alcohol inventory, and security system; and

     d.   entering the Cease Operations Orders.

130.     The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and prohibits the use of unreasonable force.

131.     As described more fully above, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 unreasonably searched, detained and seized Plaintiff, and used objectively unreasonable force, effectuating the raid of Gardendale Social with guns drawn and brandishing sledgehammers and crowbars, intimidating Plaintiff's patrons and employees with the use of weapons, detaining and verbally abusing Plaintiff's employees, and unlawfully destroying Plaintiff's property, which was absolutely unreasonable.

132.     Under Pennsylvania law, pointing a loaded firearm at another without justification

is the crime of recklessly endangering another person, and even pointing an unloaded firearm while using aggressive language, as the Defendants did during the raid, is the crime of simple assault by physical menace.

133.    Plaintiff was operating its business on September 7, 2024, and thereafter, legally and peaceably, and not in any way that would have given Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 a reasonable basis to pull up to Gardendale Social on September 7, 2024 with guns drawn and brandishing sledgehammers and crowbars, yelling and threatening Plaintiff's patrons and employees, searching, seizing and destroying Plaintiff's property, and searching and detaining Plaintiff's employees and their property, or to issue the Cease Operations Orders thereafter.

134.    Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 lacked legal authority to search and/or shut Gardendale Social down, as the cease operations order originally posted, and on which the raid was based, indicated an address other than Plaintiff's, let alone to use force to effectuate the improper cease operations order.

135.    As described more fully above, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 implemented a plan to shut down Gardendale Social, which plan included a raid wherein Defendants, fully masked, unlawfully entered Gardendale Social on September 7, 2024 with guns drawn, brandishing crow bars and sledgehammers, threatening and harassing Plaintiff's employees and customers, on the false pretense that Gardendale Social was operating illegally without a valid liquor license, when in fact it did have a valid liquor license and was operating legally, and shut Gardendal Social down

without cause, without warning, notice or any ability to be heard, with the specific intent to discourage patronage and to harm Plaintiff's business.

136.    Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 had a constitutional and/or statutory duty to intervene when Plaintiff's  business was illegally entered, when it was illegally searched, when Plaintiff's employees were illegally detained, when excessive force was used against Plaintiff's employees and patrons, and when Plaintiff's property was being destroyed.

137.    Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 were present during the September 7, 2024 raid, while Plaintiff's rights were being violated, knew that its and its employees and patrons' rights were being violated, and had a reasonable opportunity to intervene in the aforementioned violations of said  constitutional rights, but did not.

138.    Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 despite their knowledge and opportunity to intervene, failed to do so during the September 7, 2024 raid, resulting in Plaintiff sustaining injury and harm.

139.    Following the September 7, 2024 raid, Defendants City of Philadelphia Department of Licenses and Inspection and the John/Jane Doe Licenses & Inspections Officers 1-10, without justification and due process, and in an effort to further target Plaintiff and substantiate its unlawful September 7, 2024 raid, issued the Second Cease Operations Order.

140.    As described more fully above, all Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 intentionally, willfully, deliberately, maliciously, and/or  negligently, and/or recklessly took overt actions and/or refused to act, thereby depriving Plaintiff of its property, liberty, substantive due process, good name,

constitutional and civil rights, and have caused it the other harms averred herein in violation of 42 U.S.C. § 1983.

141.    In the manner described more fully above, Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 deprived Plaintiff of its rights to equal protection of the law, protection from unlawful search, seizure, and excessive force, and to due process of law. These rights are secured to Plaintiff by the provisions of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and by Title 42 U.S.C. §1983.

142.    The conduct of Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 was arbitrary, capricious, and is shocking to the conscience in that Defendants' conduct was without justification, as Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10 falsely accused Plaintiff of criminal conduct and unlawful practices, and continued the improper raid, detainment, search and seizure, and destruction of property despite Plaintiff's repeated efforts to provide proof that Gardendale Social maintained a valid liquor license and repeated notification to Defendants that the address identified on the cease-and -desist notice that was posted by them on Gardendale Social's door (on which the raid was based) was not Gardendale Social's address, and the raid effectuated by Defendants was beyond any necessary or reasonable means, and was intended to injure Plaintiff.

127.    As a direct and proximate result of the acts and omissions of Defendants City of Philadelphia and the John/Jane Doe Police Officers and Licenses & Inspections Officers 1-10, as

described more fully above, Plaintiff has suffered significant damages, including but not limited to great financial losses and expenses, lost revenues, property damage, damage to its business reputation, and deprivations of its constitutional and civil rights.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against Defendants jointly and/or severally, in an amount sufficient to fully and adequately compensate Plaintiff, punish Defendants, and deter Defendants and others similarly situated to Defendants, plus interest, costs, attorney's fees, and all other appropriate relief.

**COUNT II**
**42 U.S.C. § 1983**
**MONELL CLAIM**
**Plaintiff v. City of Philadelphia**

128.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as if set forth at length herein.

129.    Defendant City of Philadelphia is the final policymaker for the City of Philadelphia Police Department and Philadelphia Department of Licenses and Inspections.

130.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained inadequate training and policies, practices, and customs for law enforcement officers, including the John/Jane Doe Police Officer and Licenses & Inspection Officers 1-10, on how to confirm an address identified in, and proper issuance and execution of a cease and desist operations order, including, but not limited to, checking that the business to be seized is actually operating illegally and without a valid liquor license, and checking that the business allegedly operating illegally was actually at the address identified in the cease and desist operations order.

131.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has

adopted and maintained for years a recognized and accepted policy, practice, and custom of condoning and/or acquiescing to law enforcement officers, including the John/Jane Doe Police Officer and Licenses & Inspection Officer Defendants, failing to obtain reasonably trustworthy information and facts before issuing and executing a cease and desist operations order, including but not limited to, checking that the business was actually operating unlawfully without a liquor license, and that the business identified in the cease and desist operations order is actually at the address to be searched and seized before or at the time of the execution of the cease and desist operation order.

132.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has systematically failed to discipline enforcement officers, including the John/Jane Doe Police Officer and Licenses & Inspection Officer Defendants, for failing to reasonably investigate to obtain adequate facts and reasonably trustworthy information regarding the issuance and execution of a cease and desist operation order before executing thereon and otherwise entering a private lawfully operating business with guns drawn and brandishing crowbars and sledgehammers, seizing and destroying property, and unlawfully detaining a business and its patrons and employees without cause or process.

133.    The failure of Defendant City of Philadelphia to adopt adequate policies, practices, and customs and provide adequate training to their enforcement officers regarding obtaining reasonably trustworthy information and facts before issuing and executing on a cease and desist operations order, or otherwise seizing and destroying property, using excessive force and unlawfully detaining a business and its patrons and employees, was deliberately indifferent to the constitutional rights of its citizens, and was the proximate cause of the damages suffered by Plaintiff, as outlined above.

134.    The need for Defendant City of Philadelphia to train, supervise, and discipline its enforcement officers and/or to adopt or enforce a policy, practice, or custom of obtaining reasonably trustworthy information and facts before issuing and executing on a cease and desist operation orders, or otherwise seizing and destroying property, using excessive force and unlawfully detaining a business and its patrons and employees, is obvious.

135.    Said training and policy, custom, and/or practice, or lack thereof, violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of Constitution of the United States, the Laws of the United States, and of the Commonwealth of Pennsylvania.

136.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained inadequate training and policies, practices, and customs for licenses and inspection and law enforcement officers, including the John/Jane Doe Defendants, on how to confirm whether a cease and desist operations order should be issued, on confirming that the facts and information on which the cease and desist operations order are accurate, and on how to lawfully and properly execute on a cease and desist operations order, or otherwise seizing property, using force in connection therewith, and detaining a business and its patrons and employees without violating the constitutional rights of the business being ordered to cease and desist operations, such as Plaintiff, to be free from the use of excessive force against them, including but not limited to holding them at gunpoint, using verbally abusive language, and unlawfully destroying their property.

137.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained for years a recognized and accepted policy, practice, and custom of condoning and/or acquiescing to its enforcement officers, including the John/Jane Doe Police Officer and Licenses & Inspections Defendants, using unconstitutional force, and seizing and

destroying property, and interfering with the constitutionally protected rights of Plaintiff and others by arbitrarily and recklessly conducting raids under improperly issued cease and desist orders without basis or lawful justification or investigation.

138.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has adopted and maintained for years a recognized custom, policy and/or practice to deprive Plaintiff and other businesses of their ability to conduct business in compliance with applicable regulatory law and to interfere with the constitutionally protected rights of Plaintiff and others by arbitrarily and recklessly conducting raids without basis or lawful justification.

139.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has systematically failed to discipline enforcement officers, including John/Jane Doe Police Officer and Licenses & Inspections Officer Defendants, for unconstitutionally using excessive force, unlawfully detaining individuals and seizing and destroying property during the execution of a cease and desist operations order.

140.    The failure of Defendant City of Philadelphia to adopt adequate policies, practices, and customs and provide adequate training to their Licenses & Inspection and law enforcement officers regarding proper issuance of cease and desist operations orders, and constitutional limits on use of force, search, seizure, detainment, and destruction of property while executing on cease and desist operations orders, was deliberately indifferent to the constitutional rights of its citizens, and was the proximate cause of the harms suffered by Plaintiff, described more fully above.

141.    The need for Defendant City of Philadelphia to train, supervise, and discipline its

Licenses & Inspection and law enforcement officers and/or to adopt or enforce a policy, practice, or custom of respecting the constitutional limits on use of force, search, seizure, detainment, and destruction of property while issuing and executing on an a cease and desist operations order, is obvious.

142.    Said training and policy, custom, and/or practice, or lack thereof, violates the Fourth Amendment as applied to the States through the Fourteenth Amendment of Constitution of the United States, the Laws of the United States, and of the Commonwealth of Pennsylvania.

143.    Plaintiff believes and therefore avers that Defendant City of Philadelphia has been deliberately indifferent to the rights of citizens of the City of Philadelphia, Pennsylvania, to be free from licenses and inspection and law enforcement officers failing to conduct reasonable investigations before issuing cease and desist operations orders, using excessive force, and searching, seizing and destroying property in the execution of cease and desist operations orders, unlawful entries into businesses and detentions of businesses' patrons and employees, and said indifference violated Plaintiff's rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution.

144.    Plaintiff believes and therefore avers that Defendant City of Philadelphia was aware of the aforementioned policies, practices, and customs, for a substantial period of time, and despite that knowledge, failed to take steps to terminate said practices, failed to properly supervise or discipline officers, including the John/Jane Doe Police Officer and Licenses & Inspection Officer Defendants, failed to effectively train Licenses & Inspection officers/employees and law enforcement officers with regard to the legal limits on their authority,

31

and instead sanctioned, acquiesced, and/or were deliberately indifferent to the policies, practices, and customs that violated the constitutional rights of individuals such as Plaintiff.

145.   Plaintiff believes and therefore avers that Defendant City of Philadelphia knew or should have known of the aforementioned policies, practices, and customs, as well as the inadequate training, supervision, and discipline of officers from the Philadelphia Department of Licenses and Inspection, law enforcement officers of the Philadelphia Police Department, including the John/Jane Doe Defendants, and deliberately, intentionally, and knowingly failed to take steps to terminate or limit said policies, practices, and customs, including but not limited to:

    a.   Failure to provide adequate training, supervision, and discipline to officers regarding properly investigating and confirming addresses and information in issuance of cease and desist operations orders;

    b.   Failure to provide adequate training, supervision, and discipline to officers regarding execution of cease and desist operations orders;

    c.   Failure to provide adequate training, supervision, and discipline to officers regarding obtaining facts and inferring from the circumstances whether cease and desist operations orders have been properly issued and whether the subject of the cease and desist operations order is operating unlawfully;

    d.   Failure to provide adequate training, and discipline to officers regarding how to properly execute a cease and desist operations order and properly detain and restrain persons inside a business that is the subject of a cease and desist operations order;

    e.   Failure to provide adequate training, supervision, and discipline to officers regarding the proper limits on the use of force when executing on a cease and desist operations order;

    f.   Failure to provide clear, concise, and appropriate guidance, including directives, on the aforementioned constitutional obligations of enforcement officers;

    g.   Failure to conduct systematic and complete internal affairs investigations and commanding officers' investigations resulting in appropriate and documented corrective actions at all levels of the Philadelphia Police Department and the Philadelphia Department of Licenses and Inspections;

h. Failure to prevent Plaintiff from being injured and having its constitutional rights violated by members of the Philadelphia Police Department, the Philadelphia Department of Licenses and Inspections, and USMS, where Defendants knew or should have known of the dangerous propensities of said members and the systemic problem of abuses in the departments;

i. Failure to restrain the use of excessive force by members of these enforcement agencies;

j. Failure to properly test, train, and/or select its officers with regards to proper use of force;

k. Failure to properly test, train, and/or select its officers with regards to reasonable investigation for the issuance and execution of a cease and desist operations orders; and

l. Otherwise acting without due regard for the rights, safety, and position of Plaintiff in accordance with its constitutional rights.

146.  The deliberate indifference of the aforementioned training, policies, practices, and/or customs, or lack thereof, was the proximate cause of the Plaintiff's injuries and losses and the violation of its constitutional rights.

147.  By failing to take action to stop or limit the policy and/or by remaining deliberately indifferent to the systematic abuses which occurred in accordance with and as a direct and proximate result of the policies, Defendant City of Philadelphia condoned, acquiesced in, participated in, and perpetrated the policies in violation of the Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, the Laws of the United States and of the Commonwealth of Pennsylvania and in violation of 42 U.S.C. § 1983.

148.  The Plaintiff believes and therefore avers, that the Defendant City of Philadelphia has adopted and maintained for many years a recognized and accepted policy consisting of an inadequate system of review of claims of wrongful operations before issuance of cease and desist

operations orders, use of excessive force in the execution of cease and desist operations orders, and/or illegal entry, searches and seizure in the execution of cease and desist operations orders, which system has failed to identify instances of the use of said behavior to discipline, more closely supervise or retrain officers who, in fact, improperly used force or failed to conduct reasonable investigation before issuing and executing on cease and desist operations orders.

149.    Upon information and belief, the systematic deficiencies include, but are not limited to:

a.   The preparation of investigative reports assigned to vindicate obtaining invalid and improper cease and desist operations orders, and the use of force and illegal searches and seizures in the execution of cease and desist operations orders, regardless of whether such actions were justified;

b.   The preparation of investigative reports which rely solely on the word of Philadelphia Police Officers, Philadelphia Licenses and Inspection Officers and US Marshals involved in the raid of Plaintiff and which systematically fail to credit the complaints, testimony and statements of non-officer witnesses;

c.   The preparation of investigative reports which omit factual information and physical evidence that contradicts the accounts of the officers involved; and

d.   Failing to review investigative reports by responsible superior officers for accuracy or completeness and accepting the conclusions which were unwarranted by the evidence or contradicted by such evidence.

150.    The aforementioned policies, practices, customs, and/or lack of training related to reasonable investigation and use of excessive force is shown by past incidents involving the City of Philadelphia and shows a policy, practice and/or custom and a need for training, including but not limited to:

a.   Florencia Fourcade v. John Doe 1-8, et al., 2:21-cv-05607 (E.D. Pa.), in which Philadelphia police who did not have a warrant entered and searched the plaintiff's home, with guns drawn, for approximately twenty (20) minutes; the police were looking for an individual other than the plaintiff who the plaintiff

had never met. The plaintiff had purchased the residence about six (6) months prior to the incident.

b.  Felishatay Alvarado v. City of Philadelphia, et al., 2:22-cv-03763 (E.D. Pa.), in which Philadelphia police had a warrant for an individual in the second-floor apartment of a two-unit building and instead entered the first-floor apartment, holding the plaintiff at gunpoint for approximately thirty (30) minutes, killing her dog, and searching her home.

c.  John Brown v. City of Philadelphia, et al., 2:23-cv-04181 (E.D. Pa.), in which Philadelphia police entered the plaintiff's home, held him at gunpoint and grabbed him aggressively while searching for his son who had been incarcerated in Delaware County for approximately two (2) months at the time of the incident.

d.  Richard Miller, et al., v. City of Philadelphia, et al., 2:23-cv-04762 (E.D. Pa.), in which Philadelphia police forced their way into the plaintiffs' home, held them at gunpoint, and treated them in a violent and aggressive manner while looking for an individual who had not lived there for five (5) years.

151.    The foregoing acts, omissions, and systematic deficiencies are policies, practices and customs of Defendant City of Philadelphia which caused the John/Jane Doe Police Officer and Licenses & inspection Officer Defendants to be unaware of the rules and laws governing obtaining reasonably trustworthy information and facts before issuing and executing on a cease and desist operations order, or otherwise conducting a raid using excessive force, searching and seizing without justification and destroying property, all with the procedural result that officers are more likely to obtain invalid cease and desist operations orders, use excessive force, destroy property, and conduct illegal searches and seizures in situations where such conduct is neither necessary, reasonable, nor legal.

152.    As a result of the acquiescence, tacit approval, and encouragement of Defendant City of Philadelphia, outlined more fully above, Plaintiff's injuries arise from:

a.  express policies that, when followed, deprived Plaintiff of its constitutional rights, and/or;

    b.   a widespread practice that, though not authorized by express policy or written law, is so permanent and well-settled as to constitute custom or usage with force of law; and/or

    c.   the deliberate indifference to the rights of citizens; and/or

    d.   the John/Jane Doe Defendants who committed the above outlined constitutional torts were officials with final policymaking authority, or an official ratified a subordinate's unconstitutional actions.

153.   The failure of Defendant City of Philadelphia to curb these, customs, policies and practices through training, investigation, supervision, and discipline is a cause of ongoing risk of harm to Plaintiff and others, and amounts to deliberate indifference to the rights of person with whom the Defendant City of Philadelphia and John/Jane Doe Police Officer and Licenses & Inspections Officers/employees come into contact.

154.   The failure of Defendant City of Philadelphia to train, investigate, supervise and discipline resulted in violation of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights, as outlined more fully above.

155.   Defendant City of Philadelphia's conduct has damaged, and continues to damage, Plaintiff in an amount to be determined at trial.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff respectfully requests compensatory damages against Defendant City of Philadelphia in an amount sufficient to fully and  adequately compensate Plaintiff, plus interest, costs, attorney's fees, and all other appropriate relief.

**COUNT III**
**42 U.S.C. § 1983**
**BIVENS CLAIM**
**(VIOLATIONS OF THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS)**

**Unlawful Search and Seizure, Taking, Excessive Force, Substantive and Procedural Due Process, Equal Protection, and Bystander Liability**
**Plaintiff v. John/Jane Doe United States Marshalls 1-10**

156.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as if set forth at length herein.

157.    Under the Civil Rights Act, 42 U.S.C. §1983, no person acting under the color of state law may deprive a person of rights protected by the United States Constitution or federal law.

158.    With respect to the actions set forth in this Complaint, the John/Jane Doe US Marshal Defendants at all times acted "under the color of state law" with each of the John/Jane Doe US Marshal Defendants acting in their official capacity and in their individual capacity.

159.    Acting under color of law, the John/Jane Doe US Marshal Defendants worked a denial of Plaintiff's rights, privileges or immunities secured by the United States Constitution and by Federal law.

160.    In the manner described herein above, the John/Jane Doe US Marshal Defendants all acted with deliberate indifference and/or reckless disregard of Plaintiff's constitutional rights.

161.    Pursuant to the 14th Amendment of the United States Constitution, no person shall be deprived of life, liberty or property without due process of law.

162.    Plaintiff is a "person" within the meaning of the 14th Amendment.

163.    Pursuant to the 14th Amendment of the United States Constitution, Plaintiff has "property interests" in:

    a.    the ability to use and enjoy its property;
    b.    the right to conduct its business without adversely affecting public health, safety and welfare; and

    c.      its business reputation.

164.   Pursuant to the 14th Amendment of the United States Constitution, Plaintiff has "liberty interests" in:

    a.      the right to operate a legitimate business, free from arbitrary deprivation by, and harassment from public officials;

    b.      the right to be free from misuse of the civil process; and

    c.      the right to be free from false, baseless and/or exaggerated accusations of violations of laws, regulations, and/or ordinance.

165.   As more fully set forth above, Defendants have deprived Plaintiff of its constitutionally-protected substantive due process rights by, among other things:

    a.      impeding Plaintiff's ability to use and enjoy its property;

    b.      impeding Plaintiff's ability to operate its business;

    c.      tarnishing Plaintiff's reputation in the business community and the City of Philadelphia;

    d.      treating Plaintiff in a disparate manner than other businesses and citizens of the City of Philadelphia who have liquor licenses.

166.   As set forth more fully above, the John/Jane Doe US Marshal Defendants have denied Plaintiff equal protection by, among other things:

    a.      selectively enforcing the laws, ordinances and regulations of Pennsylvania against Plaintiff but not other similarly situated citizens and businesses in the City of Philadelphia;

    b.      selectively using their regulatory authority to interfere with the business activities of Plaintiff but not other similarly situated citizens and businesses in the City of Philadelphia;

    c.      selectively and unreasonably raiding Gardendale Social but not other similarly situated citizens and businesses in the City of Philadelphia; and

      d.     treating Plaintiff in a disparate manner than other businesses and citizens of the City of Philadelphia.

167.    Pursuant to the Fifth Amendment of the United States Constitution, Plaintiff is protected against the taking of private property without just compensation.

168.    As described more fully above, the John/Jane Doe US Marshal Defendants have deprived Plaintiff of its Fifth Amendment rights and took Plaintiff's property without just compensation by, among other things:

      a.     shutting Gardendale Social down on September 7, 2024;

      b.     confiscating Plaintiff's' liquor and documents;

      c.     damaging Plaintiff's cash registers, POS system, televisions, alcohol inventory, and security system; and

      d.     executing on the wrongfully issued Cease Operations Order.

169.    The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and prohibits the use of unreasonable force.

170.    As described more fully above, the John/Jane Doe US Marshal Defendants unreasonably searched, detained and seized Plaintiff, and used objectively unreasonable force, effectuating the raid of Gardendale Social with guns drawn and brandishing sledgehammers and crowbars, intimidating Plaintiff's patrons and employees with the use of weapons, detaining and verbally abusing Plaintiff's employees, and unlawfully destroying Plaintiff's property, which was absolutely unreasonable.

171.    Plaintiff was operating its business on September 7, 2024, legally and peaceably, under a valid liquor license, and not in any way that would have given the John/Jane Doe US Marshal Defendants a reasonable basis to pull up to Gardendale Social with guns drawn and brandishing sledgehammers and crowbars, yelling and threatening Plaintiff's patrons and

employees, searching, seizing and destroying Plaintiff's property, and searching and detaining Plaintiff's employees and their property.

172.    The John/Jane Doe US Marshal Defendants lacked legal authority to search and/or shut Gardendale Social down, as the cease operations order originally posted, and on which the raid was based, indicated an address other than Plaintiff's, let alone to use force to effectuate the improper cease operations order.

173.    As described more fully above, the John/Jane Doe US Marshal Defendants raided and unlawfully entered Gardendale Social on September 7, 2024 with guns drawn, brandishing crow bars and sledgehammers, threatening and harassing Plaintiff's employees and customers, on the false pretense that Gardendale Social was operating illegally without a valid liquor license, when in fact it did have a valid liquor license and was operating legally, and shut Gardendal Social down without cause, without warning, notice or any ability to be heard, with the specific intent to discourage patronage and to harm Plaintiff's business.

174.    The John/Jane Doe US Marshal Defendants had a constitutional and/or statutory duty to intervene when Plaintiff's business was illegally entered, when it was illegally searched, when Plaintiff's employees were illegally detained, when excessive force was used against Plaintiff's employees and patrons, and when Plaintiff's property was being destroyed.

175.    The John/Jane Doe US Marshal Defendants were present while Plaintiff's rights were being violated, knew that Gardendale Social's employees and patrons' rights were being violated, and had a reasonable opportunity to intervene in the aforementioned violations of their constitutional rights.

176.    The John/Jane Doe US Marshal Defendants, despite their knowledge and opportunity to intervene, failed to do so, resulting in Plaintiff sustaining injury and harm.

177.    As described more fully above, the John/Jane Doe US Marshal Defendants intentionally, willfully, deliberately, maliciously, negligently, and/or recklessly took overt actions and/or refused to act, thereby depriving Plaintiff of its property, liberty, substantive due process, good name, constitutional and civil rights, and have caused it the other harms averred herein in violation of 42 U.S.C. § 1983.

178.    In the manner described more fully above, the John/Jane Doe US Marshal Defendants deprived Plaintiff of its rights to equal protection of the law, protection from unlawful search, seizure, and excessive force, protection from the taking of its property without just compensation, and to due process of law. These rights are secured to Plaintiff by the provisions of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and by Title 42 U.S.C. §1983.

179.    The conduct of the John/Jane Doe US Marshal Defendants was arbitrary, capricious, and is shocking to the conscience in that it was without justification, as Defendants falsely accused Plaintiff of criminal conduct and unlawful practices without proper investigation, and continued the raid, detainment, search and seizure despite Plaintiff's repeated efforts to provide proof that Gardendale Social maintained a valid liquor license and repeated notification to Defendants that the address identified on the cease-and -desist notice that was posted by them on Gardendale Social's door (on which the raid was based) was not Gardendale Social's address, and the raid effectuated by the John/Jane Doe US Marshal Defendants was beyond any necessary or reasonable means, and was intended to injure Plaintiff.

180.    As a direct and proximate result of the acts and omissions of the John/Jane Doe US Marshal Defendants, as described more fully above, Plaintiff has suffered significant damages,

including but not limited to great financial losses and expenses, lost revenues, property damage, damage to its business reputation, and deprivations of its constitutional and civil rights.

181.    The acts and failures to act of the John/Jane Doe US Marshal Defendants were so malicious, intentional, reckless, and/or recklessly indifferent to Plaintiff's rights and well-being that the imposition of punitive damages is warranted.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against the John/Jane Doe US Marshal Defendants jointly and/or severally, in an amount sufficient to fully and adequately compensate Plaintiff, punish Defendants, and deter Defendants and others similarly situated to Defendants, plus interest, costs, attorney's fees, and all other appropriate relief.

**COUNT IV**
**42 U.S.C. § 1983**
**FEDERAL TORT CLAIMS ACT**
**Plaintiff v. United States Marshal Service**

182.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as if set forth at length herein.

183.    Defendant USMS was at all times material hereto an agency within the United States Department of Justice, which is a department of the United States of America under the authority of the United States Attorney General.

184.    Defendant USMS is responsible and/or vicariously liable for the acts and omissions of the John/Jane Doe US Marshals, who were employees of Defendant USMS and acting within the course and scope of said employment during the September 7, 2024 raid.

185.    As outlined more fully above, during the September 7, 2024 raid of Gardendale

Social the John/Jane Doe US Marshals violated Plaintiff's clearly established constitutional rights under the Fourth, Fifth, and Fourteenth Amendments to be free from unlawful search and seizure, takings without just compensation, excessive force, to deprivations of its substantive and procedural due process, equal protection, and bystander liability, all of which a reasonable person would have known.

186.    A reasonable United States Marshal, confronted with the specific facts presented in this case and the law in effect at the time, would have known that their conduct violated the Plaintiff's constitutional rights.

187.    Additionally, and as outlined above, the conduct of the John/Jane Doe US Marshals was unjustified and contrary to standard law enforcement policies, procedures, custom, practice, and/or training.

188.    By virtue of the facts set forth above, Defendant USMS is liable for the negligent, outrageous, and culpable acts of its employees, including the John/Jane Doe US Marshals.

189.    As a direct and proximate result of the deprivation and violation of Plaintiff's Fourth, Fifth and Fouteenth Amendment rights as well as the negligent, outrageous, and culpable conduct of the Defendant John/Jane Doe US Marshals, Defendant USMS is liable.to Plaintiff for the damages it suffered and incurred, including but not limited to great financial losses and expenses, lost revenues, property damage, damage to its business reputation, and deprivations of its constitutional and civil rights.

WHEREFORE, Plaintiff respectfully requests compensatory damages against Defendant USMS in an amount sufficient to fully and  adequately compensate Plaintiff, plus interest, costs, attorney's fees, and all other appropriate relief.

**COUNT V**

43

**42 U.S.C. § 1983**
**(CONSPIRACY)**
**Plaintiff v. All Defendants**

190.    All preceding paragraphs are fully incorporated herein by reference.

191.    As described more fully above, all Defendants intentionally, willfully, deliberately, maliciously, negligently, and/or recklessly, and unlawfully agreed and conspired to deprive Plaintiff of its property, interests, good name, constitutional and civil rights and to cause it other harm as averred herein.

192.    As evidenced by their concerted conduct outlined more fully above, Defendants entered into an agreement and/or reached a meeting of their minds to violate Plaintiff's constitutional rights to be free from illegal searches and seizure, the use of excessive force, the taking of its property without just compensation, due process and equal protection.

193.    Defendants performed overt acts in furtherance of the conspiracy, including but not limited to forcing their way into Gardendale Social with excessive force and threats, and holding and detaining Plaintiff's employees and patrons at gunpoint.

194.    As detailed above, the conspiracy directly and proximately resulted in harm to the Plaintiff, including the deprivation of its rights and privileges under the Constitution of the United States, and the Laws of the United States and of the Commonwealth of Pennsylvania, and was in violation of 42 U.S.C. § 1983.

195.    As a direct and proximate result of the concerted acts and omissions of all Defendants, as described more fully above, Plaintiff has suffered significant damages, including but not limited to great financial losses and expenses, lost revenues, property damage, damage to its business reputation, and deprivations of its constitutional and civil rights.

196.    The above-described actions of Defendants, were so malicious, intentional and

reckless and displayed such a reckless indifference to the Plaintiff's rights and well-being, that the imposition of punitive damages is warranted.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff requests compensatory and punitive damages against Defendants jointly and/or severally, in an amount sufficient to fully and adequately compensate Plaintiff, punish Defendants, and deter Defendants and others similarly situated to Defendants, plus interest, costs, attorney's fees, and all other appropriate relief.


**COUNT VI**
**NEGLIGENCE**
**Plaintiff v. All Defendants**

197.    Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as though each were set forth at length herein.

198.    The failure to investigate and wrongful issuance of the cease and desist operations order when Plaintiff had a valid liquor license, the execution of the cease and desist operation order against Plaintiff when the address listed therein was not Plaintiff's address and Plaintiff notified Defendants of said fact, the destruction of Plaintiff's property, and disregarding the rights and safety of Plaintiff and other persons lawfully on Plaintiff's premises during the September 7, 2024 raid was caused by the negligence and carelessness of Defendant City of Philadelphia, USMS, and Defendant John/Jane Does, jointly and/or severally.

199.    The wrongful issuance of the Violations Notices, Cease and Desist Operations Order and Second Cease Operations Order  was caused by the negligence and carelessness of Defendants.

200.    The above-referenced injuries and damages to Plaintiff set forth herein were

caused by and were the direct and proximate result of the negligence of Defendants, which

included, but is not limited to, the following:

    a. Failing to properly investigate whether Plaintiff had a valid liquor license and whether a cease and desist operations order should have been issued on September 7, 2024 regarding Plaintiff when Plaintiff possessed a valid liquor license;

    b. Failing to confirm that the address listed on the cease and desist operations order was in fact Plaintiff 's address (which it was not);

    c. In using excessive force during the September 7, 2024 raid in executing on the improperly issued cease and desist operations order;

    d. Failing to be properly trained, educated and advised as to the appropriate protocol in executing a cease and desist operations order;

    e. Failing to abide by the City of Philadelphia Police Department guidelines associated with Liquor License Establishments (DIRECTIVE 3.18), Search Warrants (DIRECTIVE 5.7), Suspect Confrontations Questioning (DIRECTIVE 5.16), Interviews and Interrogations (DIRECTIVE 5.23), Digital Evidence (DIRECTIVE 5.30), Uniforms and Equipment (DIRECTIVE 6.7), Selection and Training (DIRECTIVE 6.9),  Departmental Organization and Authority (DIRECTIVE 7.19), Duty To Intervene To Prevent Police Misconduct, Unethical Behavior, Or Mistake (DIRECTIVE 8.10), Use Of Force (DIRECTIVES 10.1 and 10.2), Plainclothes Officers Operations (DIRECTIVE 10.8), Pedestrian Investigations (DIRECTIVE 12.8), and Property Taken Into Custody (DIRECTIVE 12.15).   the arrest, detainment and physical restraint of a potential suspect;

    f. Failing to abide by the USMS Policy directives;

    g. Failing to ensure that violations identified in the Notices issued to Plaintiff were those of Plaintiff, and nonetheless issuing a Second Cease Operations Order without justification or process; and

    h. Failing to observe and use appropriate care and caution required under the circumstances.

201. Plaintiff was operating its business on September 7, 2024, legally and peaceably,

and not in any way that would have given Defendants a reasonable basis to pull up to Gardendale Social with guns drawn and brandishing sledgehammers and crowbars, yelling and threatening Plaintiff's patrons and employees, searching, seizing and destroying Plaintiff's property, and searching and detaining Plaintiff's employees and their property for hours.

202.    Defendants failed to properly investigate before issuing the cease and desist operations order, failed to properly confirm that it had accurate information during the execution of the cease and desist operations order during the raid, and failed and refused to investigate Plaintiff's notification that it did have a valid liquor license and that the cease and desist operations order was issued in error, refused Plaintiff's requests to provide proof of its valid liquor license, and failed to properly handle and safeguard Plaintiff's property.

203.    Defendant City of Philadelphia is derivatively and vicariously liable for the negligent conduct of its agents, servants, employees, and/or independent contractors, including but not limited to Defendants John/Jane Doe, pursuant to the principles of agency, vicarious liability and/or respondeat superior, and pursuant to the care, custody or control of personal property exception to governmental immunity as set forth in the Pennsylvania Political Subdivision Tort Claims Act. See 42 Pa. Cons. Stat. § 8542(b)(3).

204.    Defendant USMS is derivatively and vicariously liable for the negligent conduct of its agents, servants, employees, and/or independent contractors, including but not limited to the John/Jane Doe Us Marshal Defendants, pursuant to the principles of agency, vicarious liability and/or respondeat superior, and pursuant to the care, custody or control of personal property exception to governmental immunity as set forth in the Pennsylvania Political Subdivision Tort Claims Act. See 42 Pa. Cons. Stat. § 8542(b)(3).

205.    The negligence and carelessness of Defendants, jointly and/or severally, as set forth

herein, was the proximate cause of the injuries and damages to Plaintiff and expenses incurred as set forth above.

WHEREFORE, Plaintiff respectfully requests compensatory damages against Defendants, jointly and severally, in an amount sufficient to fully and  adequately compensate Plaintiff, plus interest, costs, attorney's fees, and all other appropriate relief.

**COUNT VII**
**COMMERCIAL DISPARAGEMENT**
**Plaintiff v. All Defendants**

206.    Plaintiff hereby incorporates the allegations set forth in the foregoing paragraphs as if set forth at length herein.

207.    As outlined more fully above, the Defendants published false statements about Plaintiff, including that Gardendale Social did not have a liquor license, that Gardendale Social was being shut down and would not reopen, that Pearson and any Gardendale Social employee that served alcohol were going to be arrested, and that Plaintiff was operating illegally.

208.    Defendants published these false statements either knowing that they were untrue or in reckless disregard of their falsity.

209.    Defendants' false statements, were understood by others to be defamatory and that they intended to be applied to the Plaintiff.

210.    Defendants' false statements harmed the Plaintiff's reputations in the community, and severely impaired its ability to carry on its business.

211.    In uttering, and publishing the defamatory comments referred above, Defendants made major misrepresentations of Plaintiff's character and activities which could reasonably be expected to cause a reasonable person to take serious offense.

212.    The Defendants knew, at the time they published the false and defamatory

comments referred to above, that such statements would result in the pecuniary loss to the Plaintiff, and did result in pecuniary loss.

213.    As a direct and proximate result of the acts and omissions of the Defendants described herein, the Plaintiff has suffered great economic loss, loss of earning powers, and the loss of other constitutional rights and other harms described herein.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against all the Defendants, jointly and severally, for actual, general, special, compensatory and punitive damages, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH ECONOMIC ADVANTAGE
### Plaintiff v. All Defendants

214.    Plaintiff incorporates the foregoing paragraphs as if set forth at length herein.

215.    The Plaintiff had a reasonable expectation of an economic benefit or advantage owing to direct transactions with patrons.

216.    Defendants were aware of the aforementioned expectations.

217.    By the acts and omissions described more fully above, Defendants intentionally and maliciously interfered with this expectancy.

218.    Absent Defendants' acts and omissions, described more fully above, there was a reasonable probability that Gardendale Social would have profitably operated on September 7, 2024 and thereafter during the cease operations periods, and would have realized the economic benefits which it lost by its forced closure and reputational harm effectuated by the Defendants.

219.    As described more fully above, as a direct and proximate result of Defendants' acts and omissions, the Plaintiff suffered significant injury and damages.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against all the Defendants jointly and severally, for actual, general, special, compensatory and punitive damages, plus the costs of this action, including attorney's fees, and such other relief deemed to be just and equitable.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff hereby demands a jury trial in this matter.

Respectfully submitted,

ALAN L. FRANK LAW ASSOCIATES, P.C.

By:      <u>/s/  Alan L. Frank</u>
Alan L. Frank, Esquire (#34414)
Samantha Millrood, Esquire (#84700)
135 Old York Road
Jenkintown, PA 19046
P: 215-935-1000
F: 215-935-1110
afrank@alflaw.net
*Attorneys for Plaintiffs*