ALAN L. FRANK ●*+□
KYLE M. KULZER*+
SAMANTHA A. MILLROOD*+□
EVAN L. FRANK *+♫△
JORDAN E. FRANK *+□
JACLYN H. FRANK *+♫□
PATRICK W. BROWN *■+□
SERGIY MELNYK*
SEAN T. MURPHY +

 PARALEGALS
DEBRA E. MCGUCKIN
DEE A. WILK
DAWN M. WELSH

● Certified by the NJ Supreme Court
   as a Civil Trial Attorney
* MEMBER PA BAR
+ MEMBER NJ BAR
□ MEMBER NY BAR
♫ MEMBER FL BAR
■ MEMBER DC BAR
△ REGISTERED PATENT ATTORNEY

# ALAN L. FRANK
# LAW ASSOCIATES, P.C.
Attorneys at Law

135 OLD YORK ROAD
JENKINTOWN, PA 19046
(215) 935-1000
FAX NO. (215) 935-1110

NEW JERSEY OFFICE

1103 LAUREL OAK ROAD
SUITE 140
VOORHEES, NJ 08043

E-MAIL ADDRESS:
afrank@alflaw.net

October 16, 2024

**VIA E-MAIL: risk.management@phila.gov**
City of Philadelphia
Risk Management Division-Claims Unit
1515 Arch Street, 14th Fl.
Philadelphia, PA 19102-1595

    *RE:    The Gardendale Social Club 9-7-24 Incident*

Dear Sir/Madam:

    Enclosed please find four (4) Claim for Damage, Injury, or Death Notice of Claims regarding the above referenced matter.

    If you have any questions, please do not hesitate to contact me.

                            Very truly yours,

                            */s/ Alan L. Frank*

                            ALAN L. FRANK

ALF/dmw
Enclosures

# CITY OF PHILADELPHIA
RISK MANAGEMENT DIVISION - CLAIMS UNIT
1515 ARCH STREET – 14th FLOOR
PHILADELPHIA, PA 19102-1595
(215) 683-1713

## GENERAL CLAIM INFORMATION FORM

NAME: Gardendale Athletic and Social Club Inc.     DATE: September 18, 2024

ADDRESS: 421 N 9th St     HOME PHONE NUMBER: _____

CELL PHONE NUMBER: 215-378-0898

CITY/STATE/ZIP: Philadelphia, PA 19123     WORK PHONE NUMBER: _____

DATE OF BIRTH: N/A     SOCIAL SECURITY NUMBER: N/A

(Must provide date of birth and social security number in order for claim to be processed)

DATE AND TIME OF THE ACCIDENT/INCIDENT: September 7, 2024 from 1:20 am to 3:20 am

SPECIFIC LOSS LOCATION: 421 N 9th St, Philadelphia, PA 19123

DESCRIPTION OF THE ACCIDENT/INCIDENT: See Exhibit A attached hereto.

WERE THE POLICE NOTIFIED OF THE LOSS?  X  YES  ___ NO
PLEASE PROVIDE THE POLICE REPORT DISTRICT CONTROL NUMBER: N/A
NAME OF THE CITY DEPARTMENT INVOLVED: Philadelphia Police Department
NAME OF THE CITY EMPLOYEE INVOLVED: Unknown
CITY VEHICLE PROPERTY NUMBER OR TAG NUMBER: N/A
NAME(S), ADDRESS(ES) AND/OR PHONE NUMBER(S) OF ANY KNOWN WITNESS (ES): _____
Carl Pearson, Charles Do, Corten Flax, Mike Donahue, Nasiah Tabb
Address for all: 421 N 9th St, Philadelphia, PA 19123

IN ADDITION TO COMPLETING THIS FORM, PLEASE PROVIDE THIS OFFICE WITH THE FOLLOWING DOCUMENTATION:

- A COPY OF YOUR VEHICLE REGISTRATION **COVERING THE DATE OF THE ACCIDENT/INCIDENT.**
- A COPY OF YOUR INSURANCE DECLARATION SHEET **COVERING THE DATE OF THE ACCIDENT/INCIDENT.**
- **TWO** WRITTEN ESTIMATES ITEMIZING PART(S), PRICE, AND LABOR.
- PHOTOGRAPHS OF YOUR DAMAGED PROPERTY.
- PHOTOGRAPHS OF THE DEFECTIVE CONDITION THAT CAUSED THE LOSS (I.E., POTHOLE, TREE, ETC.).

NOTE: ALL DOCUMENTATION SUBMITTED WITH THIS FORM BECOMES PROPERTY OF THE CITY OF PHILADELPHIA AND ARE NON-RETURNABLE.

### FRAUD WARNING

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, MUNICIPALITY OR ANY OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

SIGNATURE: _[signature]_

E-MAIL: afrank@alflaw.net

70-338 (Rev 10/2018)

# BODILY INJURY CLAIM FORM ATTACHMENT

## CLAIMANT INFORMATION

DID YOU RECEIVE EMERGENCY MEDICAL TREATMENT? _____ YES   X _____ NO
IF YES, WHERE WERE YOUR TREATED? N/A
WERE YOU PROVIDED MEDICAL TRANSPORT? _____ YES   X _____ NO
WERE YOU HOSPITALIZED AS A RESULT OF THIS LOSS? _____ YES   X _____ NO
IF YES, WHERE WERE YOU HOSPITALIZED? N/A
HOW LONG WERE YOU HOSPITALIZED? N/A

PLEASE PROVIDE THE NAME AND ADDRESS OF YOUR TREATING PHYSICIAN(S):
N/A

PLEASE DESCRIBE THE INJURY (IES) FOR WHICH YOU WERE TREATED:
N/A

WAS FOLLOW UP TREATMENT RECOMMENDED? N/A
IF YES, PLEASE DESCRIBE: N/A

PLEASE PROVIDE THE TOTAL DURATION OF YOUR TREATMENT
START DATE: N/A
DISCHARGE DATE: N/A

IN ADDITION TO COMPLETING THIS FORM, PLEASE PROVIDE THIS OFFICE WITH THE FOLLOWING DOCUMENTATION:

- INFORMATION REGARDNG YOUR INSURANCE COVERAGE (AUTOMOBILE, HEALTH, OR ANY OTHER AVAILABLE COVERAGE) **COVERING THE DATE OF THE ACCIDENT/INCIDENT.**
- PLEASE PROVIDE YOUR MEDICAID/MEDICARE MEMBER ID NUMBER: _____
- COPIES OF ALL MEDICAL RECORDS AND MEDICAL BILLS.

**NOTE:** ALL DOCUMENTATION SUBMITTED WITH THIS FORM BECOMES PROPERTY OF THE CITY OF PHILADELPHIA AND ARE NON-RETURNABLE.

## FRAUD WARNING

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, MUNICIPALITY OR ANY OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

SIGNATURE: _[signature]_   DATE: 9-27-24

70-338 (Rev 10/2018)

# CITY OF PHILADELPHIA
RISK MANAGEMENT DIVISION – CLAIMS UNIT
1515 ARCH STREET – 14th FLOOR
PHILADELPHIA, PA 19102-1595
(215) 683-1713

## GENERAL CLAIM INFORMATION FORM

NAME: Gardendale Athletic and Social Club Inc.     DATE: September 18, 2024

ADDRESS: 421 N 9th St                              HOME PHONE NUMBER: _____

_____            CELL PHONE NUMBER: 215-378-0898

CITY/STATE/ZIP: Philadelphia, PA 19123             WORK PHONE NUMBER: _____

DATE OF BIRTH: N/A                                 SOCIAL SECURITY NUMBER: N/A

(Must provide date of birth and social security number in order for claim to be processed)

DATE AND TIME OF THE ACCIDENT/INCIDENT: September 7, 2024 from 1:20 am to 3:20 am

SPECIFIC LOSS LOCATION: 421 N 9th St, Philadelphia, PA 19123

DESCRIPTION OF THE ACCIDENT/INCIDENT: See Exhibit A attached hereto.

WERE THE POLICE NOTIFIED OF THE LOSS?  X  YES  ____ NO
PLEASE PROVIDE THE POLICE REPORT DISTRICT CONTROL NUMBER: N/A
NAME OF THE CITY DEPARTMENT INVOLVED: Philadelphia Department of Licenses & Inspections
NAME OF THE CITY EMPLOYEE INVOLVED: Unknown
CITY VEHICLE PROPERTY NUMBER OR TAG NUMBER: N/A
NAME(S), ADDRESS(ES) AND/OR PHONE NUMBER(S) OF ANY KNOWN WITNESS (ES): _____
Carl Pearson, Charles Do, Corten Flax, Mike Donahue, Nasiah Tabb
Address for all: 421 N 9th St, Philadelphia, PA 19123

IN ADDITION TO COMPLETING THIS FORM, PLEASE PROVIDE THIS OFFICE WITH THE FOLLOWING DOCUMENTATION:

- A COPY OF YOUR VEHICLE REGISTRATION COVERING THE DATE OF THE ACCIDENT/INCIDENT.
- A COPY OF YOUR INSURANCE DECLARATION SHEET COVERING THE DATE OF THE ACCIDENT/INCIDENT.
- **TWO** WRITTEN ESTIMATES ITEMIZING PART(S), PRICE, AND LABOR.
- PHOTOGRAPHS OF YOUR DAMAGED PROPERTY.
- PHOTOGRAPHS OF THE DEFECTIVE CONDITION THAT CAUSED THE LOSS (I.E., POTHOLE, TREE, ETC.).

NOTE: ALL DOCUMENTATION SUBMITTED WITH THIS FORM BECOMES PROPERTY OF THE CITY OF PHILADELPHIA AND ARE NON-RETURNABLE.

## FRAUD WARNING

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, MUNICIPALITY OR ANY OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

SIGNATURE: _[signature]_

E-MAIL: afrank@alflaw.net

70-338 (Rev 10/2018)

# BODILY INJURY CLAIM FORM ATTACHMENT

## CLAIMANT INFORMATION

DID YOU RECEIVE EMERGENCY MEDICAL TREATMENT? _____ YES  X _____ NO
IF YES, WHERE WERE YOUR TREATED? N/A
WERE YOU PROVIDED MEDICAL TRANSPORT? _____ YES  X _____ NO
WERE YOU HOSPITALIZED AS A RESULT OF THIS LOSS? _____ YES  X _____ NO
IF YES, WHERE WERE YOU HOSPITALIZED?  N/A
HOW LONG WERE YOU HOSPITALIZED? N/A

PLEASE PROVIDE THE NAME AND ADDRESS OF YOUR TREATING PHYSICIAN(S):
N/A

PLEASE DESCRIBE THE INJURY (IES) FOR WHICH YOU WERE TREATED:
N/A

WAS FOLLOW UP TREATMENT RECOMMENDED? N/A
IF YES, PLEASE DESCRIBE: N/A

PLEASE PROVIDE THE TOTAL DURATION OF YOUR TREATMENT
START DATE: N/A
DISCHARGE DATE: N/A

IN ADDITION TO COMPLETING THIS FORM, PLEASE PROVIDE THIS OFFICE WITH THE FOLLOWING DOCUMENTATION:

- INFORMATION REGARDNG YOUR INSURANCE COVERAGE (AUTOMOBILE, HEALTH, OR ANY OTHER AVAILABLE COVERAGE) **COVERING THE DATE OF THE ACCIDENT/INCIDENT.**
- PLEASE PROVIDE YOUR MEDICAID/MEDICARE MEMBER ID NUMBER: _____
- COPIES OF ALL MEDICAL RECORDS AND MEDICAL BILLS.

**NOTE: ALL DOCUMENTATION SUBMITTED WITH THIS FORM BECOMES PROPERTY OF THE CITY OF PHILADELPHIA AND ARE NON-RETURNABLE.**

## FRAUD WARNING

ANY PERSON WHO KNOWINGLY AND WITH INTENT TO DEFRAUD ANY INSURANCE COMPANY, MUNICIPALITY OR ANY OTHER PERSON FILES AN APPLICATION FOR INSURANCE OR STATEMENT OF CLAIM CONTAINING ANY MATERIALLY FALSE INFORMATION OR CONCEALS FOR THE PURPOSE OF MISLEADING INFORMATION CONCERNING ANY FACT MATERIAL THERETO, COMMITS A FRAUDULENT INSURANCE ACT, WHICH IS A CRIME AND SUBJECTS SUCH PERSON TO CRIMINAL AND CIVIL PENALTIES.

SIGNATURE: _[signature]_                                    DATE: 9-27-24

70-338 (Rev 10/2018)

EXHIBIT A

## SUMMARY OF INCIDENT

The incident to be described below occurred at the Gardendale Athletic and Social Club, 421 N 9th St, Philadelphia, PA 19123 (the "Club") in the early hours of September 7, 2024. The club has an active liquor license (#1377).

On Friday, September 6, 2024, the Club opened for business around 11:30 pm. At approximately 1:20 am, the President and CEO of the Club, Carl Pearson, was standing outside at the front door of the Club when approximately a dozen unmarked cars came speeding down the driveway and stopped in front of the entrance to the Club. The cars did not have flashing lights or any other indication that they were law enforcement. Approximately 10-20 men and women jumped out of the cars, many with guns drawn, and others brandishing sledgehammers and crowbars. All of these individuals were dressed in all black, and with the exception of one, they were all wearing ski masks covering their entire faces, so only their eyes could be seen. None of these individuals identified themselves as law enforcement.

When these individuals jumped out of the cars with their guns drawn, the Club's security guards drew their own guns in protection. The security guards for the Club and the individuals were yelling at each other to put their guns down. The individuals yelled at the security guards and Mr. Pearson to "turn around", "face the wall", "put your hands on the wall", "don't look at me", and "keep your face down". These individuals also yelled at the patrons of the Club to disburse. One of the individuals told Mr. Pearson and the security guards to empty their pockets and provide their cell phones, which they did. Another of these individuals was checking the ID of Charles Do, one of the Club's security guard, to ensure that his gun was legally registered, while Charles was sitting on the ground.

During this commotion, some of the patrons of the Club were asking these individuals what was going on. In response, the individuals stated that the Club doesn't have a liquor license, that the patrons need to leave, and that the Club is never going to reopen. At that point, Mr. Pearson tried to explain that the Club did have a valid liquor license. One of the individuals, a tall, thin, African American ma started lecturing Mr. Pearson about lying and stated that the Club did not have a liquor license. This particular individual detained Mr. Pearson during the entire incident, which lasted approximately 3 hours.

Over the next 20-30 minutes, in response to the individuals' directives, all of the patrons inside the Club filtered out. On their way out, the individuals were yelling at the patrons to not talk to Mr. Pearson or the security guards, that the Club doesn't have a liquor license, and that the Club is being shut down and won't be reopening.

About 20 minutes later, another African American individual with a grey beard came outside and asked Mr. Pearson if the Club has a liquor license. Mr. Pearson advised this individual that the Club did have a valid liquor license and that the license was probably on his desk in the office of the Club because he had been using it for renewal of the license, which is due in October 2024. Mr. Pearson also offered to provide information regarding the liquor license, which he had on his mobile phone, which was taken by the individuals. The individuals

1

would not allow Mr. Pearson to retrieve the license from the office inside the Club, and would not provide him his phone to provide the information he had thereon.

Over the next 45 minutes, the individuals went in and out of the Club. They told Mr. Pearson that they going to arrest him and send him to jail, and were going to also arrest everyone inside who had served alcohol. They further advised that they would be taking all of the cash, cash registers, sound system, alcohol, security cameras, and anything else the Club was using to operate the "illegal business". At some point in the half hour that followed, the individuals told two of the security guards for the Club that they could leave, but they continued to detain Mr. Pearson and Charles Do outside of the Club, and other bartenders and employees inside the Club.

Approximately 90 minutes into the incident, one of the individuals finally gave Mr. Pearson his cellular phone so that he could retrieve and provide any information he had regarding the Club's liquor license. Mr. Person showed one the individual that had been detaining him a letter the Club had received from the Liquor Control Board from approximately 3 weeks before that referenced the Club's active liquor license. The individual that had been detaining Mr. Pearson stated that he didn't care whether the Club had an active liquor license or not, and that Mr. Pearson needed to "manage the business better". Notwithstanding Mr. Pearson's provision of the letter showing that the Club had an active and valid liquor license, these individuals continued to detain Mr. Pearson and would not let him leave.

At approximately 2:45 am, the individuals told Charles Do that he could leave, but continued to detain Mr. Pearson outside of the Club, telling Mr. Pearson that they were "waiting for his ride", implying that police officers were on their way to arrest him, and also continued to detain employees inside the Club. At their direction, Charles Do left the Club.

Around 3 am, Charles Do came back to the Club because he forgot his bag inside. The individuals allowed Mr. Do to go inside the club, but despite repeated requests, would not allow Mr. Pearson inside the Club. At or around this time, 2 marked Philadelphia police cars pulled up to the front entrance of the Club. 1 man and 1 woman got out of the marked cars, and both were wearing shirts indicating that they were with Licenses & Inspections, and both were carrying clipboards. The woman that exited the car was holding a cease and desist notice, which she proceeded to post on the front door of the Club. When Mr. Pearson read the cease and desist notice that the woman from Licenses & Inspection had posted, he noticed that the address indicated on the Notice was not the address of the Club, and told the individuals that were detaining him and the man and woman from Licenses and Inspections that the address on the notice was not the address of the Club. Mr. Pearson also showed the woman from Licenses and Inspection the letter from the Liquor Control Board which indicated a different address for the Club than the address noted on the Cease and Desist notice that had been posted on the door of the Club, and which also referenced the Liquor License.

The individuals and the man and woman from Licenses and Inspection then gathered for a private discussion, during which they were looking at information on their computers. They proceeded to ask Mr. Pearson which building unit holds the liquor license, and Mr. Pearson explained that the liquor license was for all of the units, as indicated in the letter from the Liquor

2

Control Board. At this point, the woman from Licenses & Inspections took the cease and desist notice off the door to the Club.

The individual, who appeared to be the supervisor, spoke with the man and woman from Licenses and Inspection, and then came back and directed Mr. Pearson to leave. Mr. Pearson followed their direction and walked about 3 blocks away from the Club. Mr. Pearson then texted Mike Donahue, one of the bartenders at the Club. Mr. Donohue explained to Mr. Pearson that he was told to leave, but was about a half block from the Club and could still see the activities going on there. Mr. Donohue said the individuals were loading the club's liquor bottles onto trucks. Mr. Donahue heard one of the individuals say, "I drove 4 hours for nothing". Then Mr. Donohue recounted that he could see the individuals starting to unload the liquor off the trucks and bring it back into the Club. Nasiah Tabb, another bartender who was still inside the Club and was still being detained, told Mr. Donohue that he heard the individuals say they made a mistake with the wrong address. At approximately 3:30 am, everyone who was inside the Club, including the individuals and the bartenders that were being detained, were released and began to leave the premises.

Once the individuals had left the Club, Mr. Pearson returned to the Club and went back inside. The Club had been destroyed. Liquor bottles that were previously on shelves, were on the floor and on top of the bar. All of the open bottles of liquor, including top shelf liquor, had been emptied into the sinks of the bar. The security cameras at the Club were ripped out of the walls and were hanging disconnected. The locks to cash registers, including ones with keys in them, had been pried open and broken. Plasma tv's were ripped off the wall. A door that is locked to keep patrons out of the back of the Club was kicked off its hinges. The POS system that tied computers and cash registers together was ripped out of the wall. Hundreds of bottles of beer that were previously in boxes, were thrown carelessly into a beer cooler.

Stephen, another bartender who was detained, handed Mr. Pearson a stack of money in a rubber band. The stack had a piece of yellow paper on top with solely a phone number written on it. Stephen said one of the individuals said to call the number written on the yellow paper on Monday at 10 am.

Several expensive items that were in the Club at the time of the incident are missing, including the inventory list of alcohol, 1 Johnnie Walker Blue bottle, 1 Johnnie Walker Black bottle, 5 bottles of Ace of Spades champagne, 1-2 bottles of Moet & Chandon champagne, and 3 bottles of Dom Perignon. One of the bartenders heard one of the individuals offer a Johnnie Walker bottle to another one of the individuals.

The following individuals were witnesses to some or all of the events described above:

1. Michael Donohue.
2. Nasiah Tabb, 4819 Frankford Avenue, Philadelphia, PA 19149.
3. Kelly Berrios.
4. Jose, last name unknown.
5. Christina, last name unknown.
6. Stephen Harley, 1252 Elbridge Street, Philadelphia, PA 19111, 267-895-8699.

7. Corten Flax, 856-430-7874.
8. Marvin Williams.
9. Betty Williams.
10. Seina Kusama.
11. Alyssa Lafferty.
12. Steven Lawrence.
13. Penelope Carrasquillo.
14. Kierstin Spatz, 417 E. Lancaster Avenue, Shillington, PA 19607.
15. Charles Do.
16. Meghan Kovacs, 2582 Romig Road, Gilbertsville, PA 19525.

_____
Carl Pearson          9-27-24

4

ALAN L. FRANK •*+◻
KYLE M. KULZER*+
SAMANTHA A. MILLROOD*+◻
EVAN L. FRANK *+∆▲
JORDAN E. FRANK *+◻
JACLYN H. FRANK *+◻
PATRICK W. BROWN *◻+◻
SERGIY MELNYK*
SEAN T. MURPHY +

PARALEGALS
DEBRA E. MCGUCKIN
DEE A. WILK
DAWN M. WELSH

• Certified by the NJ Supreme Court
  as a Civil Trial Attorney
* MEMBER PA BAR
+ MEMBER NJ BAR
◻ MEMBER NY BAR
∆ MEMBER FL BAR
▪ MEMBER DC BAR
▲ REGISTERED PATENT ATTORNEY

# ALAN L. FRANK
# LAW ASSOCIATES, P.C.
Attorneys at Law

135 OLD YORK ROAD
JENKINTOWN, PA 19046
(215) 935-1000
FAX NO. (215) 935-1110

NEW JERSEY OFFICE

1103 LAUREL OAK ROAD
SUITE 146
VOORHEES, NJ 08043

E-MAIL ADDRESS:
@alflaw.net

September 9, 2024

**VIA E-MAIL:** 4cwp@comcast.net
The Gardendale Social Club
c/o Mr. Carl Pearson
4432 Somerton Road
Trevose, PA 19053

    **RE:**   Incident Involving the Police Department that Occurred on Saturday, September 7, 2024

Dear Carl:

Please let this letter serve to summarize the terms of our proposed fee engagement.

We have proposed that your Company retain us [REDACTED]

[REDACTED]

[REDACTED]

    Please let me know if you have any questions or comments with respect to the foregoing proposal. If the proposal as described herein fairly reflects your understanding of the terms of our undertaking, please be kind enough to sign and return to us (by fax or e-mail) a countersigned copy of this letter.

Certainly, should you have any comments or questions, please let me know that.

We look forward to smoothly resolving these claims for the Company. Thank you for allowing us to make this proposal to you.

Very truly yours,

ALAN L. FRANK

ALF/dem

AGREED AND ACCEPTED:

THE GARDENDALE SOCIAL CLUB

BY: _____
    CARL PEARSON   (Date)

PRESIDENT 9-9-24

ALAN L. FRANK ●*+�‍◻
KYLE M. KULZER*+
SAMANTHA A. MILLROOD*+◻
EVAN L. FRANK *+♫△
JORDAN E. FRANK *+◻
JACLYN H. FRANK *+♫◦
PATRICK W. BROWN *■+◻
SERGIY MELNYK*
SEAN T. MURPHY +

PARALEGALS
DEBRA E. MCGUCKIN
DEE A. WILK
DAWN M. WELSH

● Certified by the NJ Supreme Court
   as a Civil Trial Attorney
* MEMBER PA BAR
+ MEMBER NJ BAR
◻ MEMBER NY BAR
♫ MEMBER FL BAR
■ MEMBER DC BAR
△ REGISTERED PATENT ATTORNEY

# ALAN L. FRANK
# LAW ASSOCIATES, P.C.
### Attorneys at Law

135 OLD YORK ROAD
JENKINTOWN, PA 19046
(215) 935-1000
FAX NO. (215) 935-1110

NEW JERSEY OFFICE

1103 LAUREL OAK ROAD
SUITE 140
VOORHEES, NJ 08043

E-MAIL ADDRESS:
afrank@alflaw.net

October 16, 2024

**VIA E-MAIL:** USMSTORTclaims@usdoj.gov
U.S. Marshals Service
Office of General Counsel
Attn: OGC Torts Team
Building CG-3, 15th Floor
Washington, D.C.  20530-0001

    *RE:*   *The Gardendale Social Club 9-7-24 Incident*

Dear Sir/Madam:

    Enclosed please find two (2) Claim for Damage, Injury, or Death Notice of Claims regarding the above referenced matter.

    If you have any questions, please do not hesitate to contact me.

                  Very truly yours,

                  */s/ Alan L. Frank*

                  ALAN L. FRANK

ALF/dmw
Enclosures

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit to Appropriate Federal Agency: | 2. Name, address of claimant, and claimant's personal representative if any. (See instructions on reverse). Number, Street, City, State and Zip code. |
|---|---|
| U.S. Marshals Service<br>Office of General Counsel<br>Attn: OGC Torts Team (USMSTORTClaims@usdoj.gov)<br>Building CG-3, 15th floor<br>Washington, D.C. 20530-0001           Fax: 703-740-3980 | Gardendale Athletic and Social Club Inc., 421 N 9th St, Philadelphia, PA 19123<br>Represented by Alan L. Frank, Esq., 135 Old York Road, Jenkintown, PA 19046 |

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|
| ☐ MILITARY  ☒ CIVILIAN | NONE | NONE | 09/07/2024     Saturday | 1:20 AM - 3:20 AM |

8. BASIS OF CLAIM (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary).

See Exhibit A attached hereto.

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF THE DAMAGE AND THE LOCATION OF WHERE THE PROPERTY MAY BE INSPECTED. (See instructions on reverse side).

See Exhibit A attached hereto.

10. PERSONAL INJURY/WRONGFUL DEATH

STATE THE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE THE NAME OF THE INJURED PERSON OR DECEDENT.

See Exhibit A attached hereto.

11. WITNESSES

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| See Exhibit A attached hereto. | 421 N 9th St, Philadelphia, PA 19123 |

12. (See instructions on reverse).    AMOUNT OF CLAIM (in dollars)

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights). |
|---|---|---|---|
| 1,000,000 | 0.00 | 0.00 | 1,000,000 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM.

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side). | 13b. PHONE NUMBER OF PERSON SIGNING FORM | 14. DATE OF SIGNATURE |
|---|---|---|
| *[signature]* | 215-378-0898 | |

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729). | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

Authorized for Local Reproduction
Previous Edition is not Usable

NSN 7540-00-634-4046

STANDARD FORM 95 (REV. 2/2007)
PRESCRIBED BY DEPT. OF JUSTICE
28 CFR 14.2

95-109

| INSURANCE COVERAGE |
|---|
| In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of the vehicle or property. |

15. Do you carry accident insurance?  ☐ Yes   If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☒ No

NONE

16. Have you filed a claim with your insurance carrier in this instance, and if so, is it full coverage or deductible?   ☐ Yes  ☒ No     17. If deductible, state amount.

NONE

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (It is necessary that you ascertain these facts).

NONE

19. Do you carry public liability and property damage insurance?  ☒ Yes   If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).   ☐ No

Absolute Insurance Services
601 S White Horse Pike
Hammonton, NJ 08037

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item number 12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of the injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.*

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
 A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid."

## PAPERWORK REDUCTION ACT NOTICE

This notice is <u>solely</u> for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, DC 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

**STANDARD FORM 95** REV. (2/2007) **BACK**

EXHIBIT A

## SUMMARY OF INCIDENT

The incident to be described below occurred at the Gardendale Athletic and Social Club, 421 N 9th St, Philadelphia, PA 19123 (the "Club") in the early hours of September 7, 2024. The club has an active liquor license (#1377).

On Friday, September 6, 2024, the Club opened for business around 11:30 pm. At approximately 1:20 am, the President and CEO of the Club, Carl Pearson, was standing outside at the front door of the Club when approximately a dozen unmarked cars came speeding down the driveway and stopped in front of the entrance to the Club. The cars did not have flashing lights or any other indication that they were law enforcement. Approximately 10-20 men and women jumped out of the cars, many with guns drawn, and others brandishing sledgehammers and crowbars. All of these individuals were dressed in all black, and with the exception of one, they were all wearing ski masks covering their entire faces, so only their eyes could be seen. None of these individuals identified themselves as law enforcement.

When these individuals jumped out of the cars with their guns drawn, the Club's security guards drew their own guns in protection. The security guards for the Club and the individuals were yelling at each other to put their guns down. The individuals yelled at the security guards and Mr. Pearson to "turn around", "face the wall", "put your hands on the wall", "don't look at me", and "keep your face down". These individuals also yelled at the patrons of the Club to disburse. One of the individuals told Mr. Pearson and the security guards to empty their pockets and provide their cell phones, which they did. Another of these individuals was checking the ID of Charles Do, one of the Club's security guard, to ensure that his gun was legally registered, while Charles was sitting on the ground.

During this commotion, some of the patrons of the Club were asking these individuals what was going on. In response, the individuals stated that the Club doesn't have a liquor license, that the patrons need to leave, and that the Club is never going to reopen. At that point, Mr. Pearson tried to explain that the Club did have a valid liquor license. One of the individuals, a tall, thin, African American ma  started lecturing Mr. Pearson about lying and stated that the Club did not  have a liquor license. This particular individual detained Mr. Pearson during the entire incident, which lasted approximately 3 hours.

Over the next 20-30 minutes, in response to the individuals' directives, all of the patrons inside the Club filtered out. On their way out, the individuals were yelling at the patrons to not talk to Mr. Pearson or the security guards, that the Club doesn't have a liquor license, and that the Club is being shut down and won't be reopening.

About 20 minutes later, another African American individual with a grey beard came outside and asked Mr. Pearson if the Club has a liquor license. Mr. Pearson advised this individual that the Club did have a valid liquor license and that the license was probably on his desk in the office of the Club because he had been using it for renewal of the license, which is due in October 2024. Mr. Pearson also offered to provide information regarding the liquor license, which he had on his mobile phone, which was taken by the individuals. The individuals

1

would not allow Mr. Pearson to retrieve the license from the office inside the Club, and would not provide him his phone to provide the information he had thereon.

Over the next 45 minutes, the individuals went in and out of the Club. They told Mr. Pearson that they going to arrest him and send him to jail, and were going to also arrest everyone inside who had served alcohol. They further advised that they would be taking all of the cash, cash registers, sound system, alcohol, security cameras, and anything else the Club was using to operate the "illegal business". At some point in the half hour that followed, the individuals told two of the security guards for the Club that they could leave, but they continued to detain Mr. Pearson and Charles Do outside of the Club, and other bartenders and employees inside the Club.

Approximately 90 minutes into the incident, one of the individuals finally gave Mr. Pearson his cellular phone so that he could retrieve and provide any information he had regarding the Club's liquor license. Mr. Person showed one the individual that had been detaining him a letter the Club had received from the Liquor Control Board from approximately 3 weeks before that referenced the Club's active liquor license. The individual that had been detaining Mr. Pearson stated that he didn't care whether the Club had an active liquor license or not, and that Mr. Pearson needed to "manage the business better". Notwithstanding Mr. Pearson's provision of the letter showing that the Club had an active and valid liquor license, these individuals continued to detain Mr. Pearson and would not let him leave.

At approximately 2:45 am, the individuals told Charles Do that he could leave, but continued to detain Mr. Pearson outside of the Club, telling Mr. Pearson that they were "waiting for his ride", implying that police officers were on their way to arrest him, and also continued to detain employees inside the Club. At their direction, Charles Do left the Club.

Around 3 am, Charles Do came back to the Club because he forgot his bag inside. The individuals allowed Mr. Do to go inside the club, but despite repeated requests, would not allow Mr. Pearson inside the Club. At or around this time, 2 marked Philadelphia police cars pulled up to the front entrance of the Club. 1 man and 1 woman got out of the marked cars, and both were wearing shirts indicating that they were with Licenses & Inspections, and both were carrying clipboards. The woman that exited the car was holding a cease and desist notice, which she proceeded to post on the front door of the Club. When Mr. Pearson read the cease and desist notice that the woman from Licenses & Inspection had posted, he noticed that the address indicated on the Notice was not the address of the Club, and told the individuals that were detaining him and the man and woman from Licenses and Inspections that the address on the notice was not the address of the Club. Mr. Pearson also showed the woman from Licenses and Inspection the letter from the Liquor Control Board which indicated a different address for the Club than the address noted on the Cease and Desist notice that had been posted on the door of the Club, and which also referenced the Liquor License.

The individuals and the man and woman from Licenses and Inspection then gathered for a private discussion, during which they were looking at information on their computers. They proceeded to ask Mr. Pearson which building unit holds the liquor license, and Mr. Pearson explained that the liquor license was for all of the units, as indicated in the letter from the Liquor

2

Control Board. At this point, the woman from Licenses & Inspections took the cease and desist notice off the door to the Club.

The individual, who appeared to be the supervisor, spoke with the man and woman from Licenses and Inspection, and then came back and directed Mr. Pearson to leave. Mr. Pearson followed their direction and walked about 3 blocks away from the Club. Mr. Pearson then texted Mike Donahue, one of the bartenders at the Club. Mr. Donohue explained to Mr. Pearson that he was told to leave, but was about a half block from the Club and could still see the activities going on there. Mr. Donohue said the individuals were loading the club's liquor bottles onto trucks. Mr. Donahue heard one of the individuals say, "I drove 4 hours for nothing". Then Mr. Donohue recounted that he could see the individuals starting to unload the liquor off the trucks and bring it back into the Club. Nasiah Tabb, another bartender who was still inside the Club and was still being detained, told Mr. Donohue that he heard the individuals say they made a mistake with the wrong address. At approximately 3:30 am, everyone who was inside the Club, including the individuals and the bartenders that were being detained, were released and began to leave the premises.

Once the individuals had left the Club, Mr. Pearson returned to the Club and went back inside. The Club had been destroyed. Liquor bottles that were previously on shelves, were on the floor and on top of the bar. All of the open bottles of liquor, including top shelf liquor, had been emptied into the sinks of the bar. The security cameras at the Club were ripped out of the walls and were hanging disconnected. The locks to cash registers, including ones with keys in them, had been pried open and broken. Plasma tv's were ripped off the wall. A door that is locked to keep patrons out of the back of the Club was kicked off its hinges. The POS system that tied computers and cash registers together was ripped out of the wall. Hundreds of bottles of beer that were previously in boxes, were thrown carelessly into a beer cooler.

Stephen, another bartender who was detained, handed Mr. Pearson a stack of money in a rubber band. The stack had a piece of yellow paper on top with solely a phone number written on it. Stephen said one of the individuals said to call the number written on the yellow paper on Monday at 10 am.

Several expensive items that were in the Club at the time of the incident are missing, including the inventory list of alcohol, 1 Johnnie Walker Blue bottle, 1 Johnnie Walker Black bottle, 5 bottles of Ace of Spades champagne, 1-2 bottles of Moet & Chandon champagne, and 3 bottles of Dom Perignon. One of the bartenders heard one of the individuals offer a Johnnie Walker bottle to another one of the individuals.

The following individuals were witnesses to some or all of the events described above:

1. Michael Donohue.
2. Nasiah Tabb, 4819 Frankford Avenue, Philadelphia, PA 19149.
3. Kelly Berrios.
4. Jose, last name unknown.
5. Christina, last name unknown.
6. Stephnie Harley, 1252 Elbridge Street, Philadelphia, PA 19111, 267-895-8699.

3

7. Corten Flax, 856-430-7874.
8. Marvin Williams.
9. Betty Williams.
10. Seina Kusama.
11. Alyssa Lafferty.
12. Steven Lawrence.
13. Penelope Carrasquillo.
14. Kierstin Spatz, 417 E. Lancaster Avenue, Shillington, PA 19607.
15. Charles Do.
16. Meghan Kovacs, 2582 Romig Road, Gilbertsville, PA 19525.

_____
Carl Pearson              9-27-24

ALAN L. FRANK •*+¤
KYLE M. KULZER*+
SAMANTHA A. MILLROOD*+¤
EVAN L. FRANK *+/\
JORDAN E. FRANK *+¤
JACLYN H. FRANK *+/¤
PATRICK W. BROWN *■+¤
SERGIY MELNYK*
SEAN T. MURPHY +

PARALEGALS
DEBRA E. MCGUCKIN
DEE A. WILK
DAWN M. WELSH

* Certified by the NJ Supreme Court
  as a Civil Trial Attorney
* MEMBER PA BAR
+ MEMBER NJ BAR
¤ MEMBER NY BAR
/\ MEMBER FL BAR
■ MEMBER DC BAR
△ REGISTERED PATENT ATTORNEY

# ALAN L. FRANK
# LAW ASSOCIATES, P.C.
Attorneys at Law

135 OLD YORK ROAD
JENKINTOWN, PA 19046
(215) 935-1000
FAX NO. (215) 935-1110

**NEW JERSEY OFFICE**

1103 LAUREL OAK ROAD
SUITE 140
VOORHEES, NJ 08043

**E-MAIL ADDRESS:**
@alflaw.net

September 9, 2024

**VIA E-MAIL:** 4cwp@comcast.net
The Gardendale Social Club
c/o Mr. Carl Pearson
4432 Somerton Road
Trevose, PA 19053

    **RE:** *Incident Involving the Police Department that Occurred on Saturday, September 7, 2024*

Dear Carl:

    Please let this letter serve to summarize the terms of our proposed fee engagement.

    We have proposed that your Company retain us [REDACTED]

    Please let me know if you have any questions or comments with respect to the foregoing proposal. If the proposal as described herein fairly reflects your understanding of the terms of our undertaking, please be kind enough to sign and return to us (by fax or e-mail) a countersigned copy of this letter.

The Gardendale Social Club
c/o Mr. Carl Pearson
September 9, 2024
Page - 2 -

Certainly, should you have any comments or questions, please let me know that.

We look forward to smoothly resolving these claims for the Company. Thank you for allowing us to make this proposal to you.

Very truly yours,

ALAN L. FRANK

ALF/dem

AGREED AND ACCEPTED:

THE GARDENDALE SOCIAL CLUB

BY: _____
CARL PEARSON      (Date)
PRESIDENT  9-9-24

*Please visit us at www.alflaw.net*